ELGIN, Commissioner of Motor Vehicles,
*v.* CAPITAL GREYHOUND LINES
SAME *v.* PENNSYLVANIA GREYHOUND LINES,
INC.
SAME *v.* RED STAR MOTOR COACHES, INC.

[No. 81, October Term, 1948.]

*Decided February 10, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Hall Hammond, Attorney General,* and *Richard W. Case, Assistant Attorney General,* for the appellant.

*Clarence W. Miles* and *Benjamin C. Howard,* with whom were *Miles, Walsh, O'Brien & Morris* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

These are three appeals by W. Lee Elgin, Commissioner of Motor Vehicles of the State of Maryland, (the Commissioner), appellant, from orders of the Superior Court of Baltimore City overruling his demurrers to petitions for mandamus filed by Capitol Greyhound Lines, a body corporate, (Capitol), Pennsylvania Greyhound Lines, Inc., a body corporate, (Greyhound), and Red Star Motor Coaches, Inc., a body corporate, (Red Star), appellees.

The petitions allege that the appellees are corporations engaged in the business of the public transportation of passengers for hire by motor vehicles. All of the appellees have operated pursuant to authority vested in them by the Interstate Commerce Commission. Appellee, Red Star, since 1938, has operated daily a passenger bus line between Rehoboth, Delaware, and Baltimore, a distance of approximately 120 miles, 64 miles of which are over state, state aid and improved county roads in Maryland. The particular operation is but part of an integrated bus system serving parts of Maryland, Delaware, and Pennsylvania. Appellee, Capitol, since November 30, 1930, has operated daily a passenger bus line between Cincinnati, Ohio, and Washington, D. C., a distance of approximately 496 miles, nine miles of which are over state, state aid and improved county roads of Maryland. Appellee, Greyhound, since April 25, 1930, has operated a passenger bus line between Philadelphia and Norfolk, a distance of approximately 245.3 miles. Greyhound operates the portion of the road between Philadelphia and the Maryland-Virginia state line, a distance of approximately 172.6 miles, 41 miles of which are over state, state aid and improved county roads of Maryland, the said route being a part of a nation wide integrated bus system.

Appellee, Red Star, transported over the above designated route for the period from June 1, 1947 to November 1, 1947, a total of 13,910 passengers producing total gross revenues of $21,087.18. Five thousand thirty-five passengers in interstate commerce originating from or destined to points within Maryland thereby produced revenues of $11,324.41 of the aforesaid total gross revenues. Over this route it transported 6,577 intrastate passengers producing gross revenues of $9,015.89.

Appellee, Capitol, transported over its above designated route from October 1, 1946 to September 30, 1947, a total of 406,572 passengers with total gross revenues of $704,450. Of this number 1,509 traveled in interstate commerce producing $3,695.80 of the aforesaid total

gross revenues. Over this route it transported in intrastate commerce 11 such passengers producing gross revenues of $3.25.

Appellee, Greyhound, over the above designated route from October 1, 1946 to September 30, 1947, transported a total of 168,684 passengers producing total gross revenues of $436,326.92. All of these passengers traveled exclusively in interstate commerce. Greyhound has no authority from the Public Service Commission of Maryland or from any other agency authorizing it to transport passengers in intrastate commerce in Maryland.

Each of the appellees purchased a public passenger motor vehicle during the year 1947 necessary for use over its respective aforementioned routes and each obtained from the Public Service Commission of Maryland a permit authorizing it to operate this motor vehicle in interstate commerce over the roads and highways of the State of Maryland embraced in each of its respective routes. Red Star purchased its vehicle on July 18, 1947, at a cost of $18,637.50. Capitol's vehicle was purchased on July 18, 1947, at a cost of $25,258.70. Greyhound's purchase was made on October 22, 1947, at a cost of $29,002.60.

Capitol and Greyhound on January 8, 1948, and Red Star on January 12, 1948, applied to the Department of Motor Vehicles for the issuance of a certificate of title for the public passenger vehicles purchased by them and each presented the permit obtained from the Public Service Commission of Maryland. Each application was made on forms provided by the Department of Motor Vehicles and each appellee tendered to that Department the sum of $1 with each application for the issuance of a certificate of title for each motor vehicle.

Appellees allege that by Article 81, Section 218, of the Annotated Code of Maryland (1947 supplement), Chapter 326 of the Acts of 1947, the issuance of a certificate of title for a motor vehicle is a prerequisite to the issuance of a registration certificate and distinguishing plates and markers, and by Article 66½, Section 20

of the Annotated Code of Maryland, (1947 Supplement), a registration certificate and distinguishing plates and markers are required before any motor vehicle may be operated over the highways of the State of Maryland.

Those three applications for the issuance of a certificate of title were refused by the Commissioner and the sum tendered in payment was returned to the appellees. In each case the Commissioner alleged that the amount tendered was insufficient and that the applicants were required to pay an excise tax of two per cent on the fair market value of each public passenger motor vehicle as required by Section 25A of Article 66½ of the Annotated Code of Maryland, (1947 Supplement), Chapter 560, Section 25A of the Acts of 1947, as a condition precedent to the issuance of the certificate of title, the issuance of the certificate of registration and the distinguishing plates and markers, although the Commissioner admitted that the appellees had complied with all other requirements entitling them to a certificate of title. The appellees further allege that the amount of the additional tax demanded by the Commissioner from Red Star is $372.75, from Capitol $505.17, and from Greyhound $580. The appellees allege that the Commissioner cannot require the payment of this additional tax for the reason that Section 25A of Article 66½ *supra,* would impose an unlawful burden on interstate commerce in violation of the Commerce Clause of the Federal Constitution, Art. 1, § 8, cl. 3. The appellees asked that a writ of mandamus be issued to the appellant commanding him to accept the $1 tendered and to issue to the appellees a certificate of title for the aforesaid public passenger vehicles without the payment of the said two per cent tax.

After the overruling of demurrers filed by the appellant to each of these petitions, the trial judge issued an order that the writs of mandamus be issued. He further provided that the order in each case be stayed pending the final determination by this Court and further that the appellees be excused from filing an appeal bond. From

those orders by the trial judge, the appellant appeals here.

For the purposes of this opinion, the following tabulation is offered by the appellees:

|  | Entire Route Travelled | Operation in Maryland | Amount of Tax |
|---|---|---|---|
| Red Star | 120 Miles | 64 Miles | $372.75 |
| Capitol | 496 Miles | 9 Miles | 505.17 |
| Greyhound | 172 Miles | 41 Miles | 580.00 |

Article 1, Section 8, Clause 3 of the Federal Constitution, hereinafter referred to as the "Commerce Clause", gives to the Congress of the United States the power "To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes".

Section 25A of Article 66½, *supra,* provides in part: "(Excise Tax for the Issuance of Certificates of Title.) (a) In addition to the charges prescribed by this Article there is hereby levied and imposed an excise tax for the issuance of every original certificate of title for motor vehicles in this State and for the issuance of every subsequent certificate of title for motor vehicles in this State in the case of sales or resales thereof, and on and after July 1, 1947, the Department of Motor Vehicles shall collect said tax upon the issuance of every such certificate of title of a motor vehicle at the rate of two per centum of the fair market value of every motor vehicle for which such certificate of title is applied for and issued. * * * (c) The Department of Motor Vehicles shall remit all sums collected under the provisions of this section to the State Treasurer, who shall use and apply the same, first, to the extent required for debt service on State Highway Construction Bonds pursuant to Sections 147G to 147P, both inclusive, of Article 89B of the Annotated Code of Maryland (1939 Edition), as enacted by Section 18 of Chapter 560, Acts of 1947, and shall transfer the balance thereof, if any, to the construction fund for the State Roads Commission provided by Section 11 (e) of said Article 89B."

The titling of Chapter 560 of the Acts of 1947, *supra,* states in part that the Act is "to provide for the financing, planning, constructing and maintaining of public roads in the State". The Act itself so provides. The trial judge found that the proceeds were to be used for servicing the debt on State highway construction bonds and the balance, if any, went to the construction fund of the State Roads Commission and were to be specifically used for road purposes. The appellees do not dispute this. In fact they state in their brief: "The proceeds of the challenged tax are now expressly allocated to the construction and maintenance of public highways * * *." There is no dispute that the money from this tax is used specifically for road purposes.

The primary question before us is therefore whether this tax, used specifically for road purposes, although having no specific relationship to road use, is a violation of the Commerce Clause of the Federal Constitution. The appellees contend that this state tax imposed on interstate carriers for the privilege of using the roads of this State, unless purely nominal in amount, is valid only if not more than compensatory and the amount of the charge must necessarily be predicated upon the use made or the use to be made of the roads of Maryland. In other words, they contend that the charge in dispute, must bear some reasonable relationship to the privilege of using the Maryland highways and, if not, it is repugnant to the Commerce Clause of the Federal Constitution.

The appellant, on the other hand, contends that the tax here in question is a reasonable and nondiscriminatory tax imposed upon the privilege of using the roads of the State of Maryland and is constitutional regardless of whether the tax bears any specific relationship to road use.

By Chapter 560 of the Acts of 1947, here in question, for the first time the tax was made to apply not only to the original issuance of the title certificate but also to any subsequent transfer of title. The new act also

provided for the first time that the proceeds of the tax are to be used first for servicing the debt on the State highway construction bonds and the balance, if any, is to be paid to the construction fund of the State Roads Commission.

Where a tax on interstate motor carriers is allocated to state highway funds, it is an imposition on the privilege of using the state roads and is not a violation of the Commerce Clause if reasonable in amount and nondiscriminatory. *Interstate Transit, Inc. v. Lindsey,* 1931, 283 U. S. 183, 186, 51 S. Ct. 380, 75 L. Ed. 953; *Morf v. Bingaman,* 1936, 298 U. S. 407, 412, 56 S. Ct. 756, 80 L. Ed. 1245; *Ingels v. Morf,* 1937, 300 U. S. 290, 294, 57 S. Ct. 439, 81 L. Ed. 653; *Aero Mayflower Transit Co. v. Board of Railroad Commissioners,* 332 U. S. 495, 505, 68 S. Ct. 167, 92 L. Ed. 153.

The question before us is therefore narrowed as to whether this tax imposed upon the privilege of using the State roads, having no specific relationship to road use, is reasonable and nondiscriminatory. The burden of proof is on the taxpayer to show that the tax is unreasonable. *Clark v. Paul Gray, Inc.,* 1939, 306 U. S. 583, 59 S. Ct. 744, 83 L. Ed. 1001.

In *Morf v. Bingaman, supra,* decided in 1936, the State of New Mexico by a statute denied to all persons the use of the highways of the State for the transportation of any motor vehicle on its own wheels, for the purpose of selling it or offering it for sale without a special permit. For this permit the statute levied a fee of $7.50 if the vehicle was transported by its own power and $5 if it was towed or drawn by another vehicle. The appellant, a resident and citizen of California, purchased new and used automobiles in other states and transported them, on their own wheels, over state highways to California, where he offered them for sale. He usually transported such cars over the highways of New Mexico for a distance of about 165 miles in processions, or caravans. The Supreme Court of the United States said in that case 298 U. S. at page 412, 56 S. Ct. at page 758, 80 L. Ed.

1245: "As the tax is not on the use of the highways but on the privilege of using them, without specific limitation as to mileage, the levy of a flat fee not shown to be unreasonable in amount, rather than of a fee based on mileage, is not a forbidden burden on interstate commerce. See *Clark v. Poor, supra* [274 U. S. 554, 47 S. Ct. 702, 71 L. Ed. 1199]; *Aero Mayflower Transit Co. v. Georgia Public Service Commission, supra* [295 U. S. 285, 55 S. Ct. 709, 79 L. Ed. 1439]." It was further said, 298 U. S., at page 413, 56 S. Ct., at page 759, 80 L. Ed 1245: "There is nothing in the Fourteenth Amendment which requires classification for taxation to follow any particular form of words."

In the case of *Dixie Ohio Express Co. v. State Revenue Commission*, 1939, 306 U. S. 72, 59 S. Ct. 435, 83 L. Ed. 495, the appellant was an Ohio corporation engaged exclusively in interstate transportation as a common carrier of property for hire by motor vehicle including hauling between points in Georgia and points in other states. The State of Georgia imposed a maintenance tax on trucks and trailers used on State roads measured by the rated capacity or factory weight of the vehicle. This tax was from $50 to $75 annually. The Supreme Court of the United States said that consistently with the Commerce Clause of the Constitution a state could impose upon vehicles used exclusively for interstate transportation a fair and reasonable tax as compensation for the privilege of using its highways for that purpose. The Court in that case held that the language of the statute disclosed the intention of the State to require payment of compensation for the privilege of operating over its roads the specified vehicles for the transportation of property. It further held that this tax contained no hint of hostility to interstate commerce or a purpose to impose a charge on the privilege or business of interstate transportation. The Court further pointed out that the appellant would not claim that the privilege to operate for a year one hundred pieces of its equipment over any or all of the State roads of Georgia was not worth $6,000,

the amount of the taxes in controversy. The Court further pointed out that the amounts paid for license tags, public service tags and taxes on gasoline were without significance in the case.

In the case of *Aero Mayflower Transit Co. v. Board of Railroad Commissioners, supra,* decided December 8, 1947, the State of Montana imposed a flat tax of $10 annually upon each vehicle operated by a motor carrier over the highways of that State and a fee of one-half of one per cent of the carrier's gross operating revenue from its operations in Montana with an annual minimum of $15 per vehicle in consideration of the use of the highways and in addition to all other motor vehicle license fees and taxes. The Supreme Court of the United States in that case pointed out that the two flat taxes, one for $10 and the other for $15, payable annually upon each vehicle operated on Montana highways were declared to be in addition to all others and to be imposed "in consideration of the use of the highways of this state". [332 U. S. 495, 68 S. Ct. 171.] The Court further said: "It is far too late to question that a state, consistently with the commerce clause, may lay upon motor vehicles engaged exclusively in interstate commerce, or upon those who own and so operate them, a fair and reasonable, nondiscriminatory tax as compensation for the use of its highways. * * * And the aggregate amount of the two taxes taken together is less than the amount of similar taxes this Court has heretofore sustained. *Cf. Dixie Ohio Express Co. v. [State Revenue] Commission, supra,* [306 U. S. 72, 59 S. Ct. 435, 83 L. Ed. 495] ; *Aero Mayflower Transit Co. v. Georgia [Public Service] Commission, supra* [295 U. S. 285, 55 S. Ct. 709, 79 L. Ed. 1439]." The Court further said: "The exactions in the present case fall clearly within the rule of *Morf v. Bingaman* and its predecessors in authority, and therefore, like that case, outside the decisions in the Interstate Transit and like cases. Both taxes are levied 'in consideration of the use of the highways of this state,' that is, as compensation for their use, and bear only on the privilege of using

them, not on the privilege of doing the interstate business. Moreover, the flat $10 fee laid by § 3847.16 (a) is further identified as one on the privilege of use by the fact that 'unlike the general tax in *Interstate Transit, Inc. v. Lindsey,* 283 U. S. 183, 51 S. Ct. 380, 75 L. Ed. 953, the levy of which was unrelated to the use of the highways, grant of the privilege of their use is by the present statute made conditional upon payment of the fee.' " In holding that the flat minimum of $15 annually was not unreasonable, the Court further said: "And appellant has advanced no tenable basis in rebuttal of the legislative declaration that this tax too is exacted in consideration of the use of the state's highways, *i. e.,* for the privilege of using them, not for that of doing the interstate business. Here, as in *Morf v. Bingaman [supra],* 'there is ample support for a legislative determination that the peculiar character of this traffic involves a special type of use of the highways,' with enhanced wear, tear and hazards laying heavier burdens on the state for maintenance and policing than other types of traffic create. [298 U. S. 407, 411, 56 S. Ct. 756, 80 L. Ed. 1245, 1249.] It is to compensate for these burdens that the taxes are imposed, and appellant has not sustained its burden. *Clark v. Paul Gray, Inc., supra,* 306 U. S. [583], at page 599, 59 S. Ct. [744] at page 753, 83 L. Ed. 1001, [1013], and authorities cited, of showing that the levies have no reasonable relation to that end. It is of no consequence that the state has seen fit to lay two exactions, substantially identical, rather than combine them into one, or that appellant pays other taxes which in fact are devoted to highway maintenance. For the state does not exceed its constitutional powers by imposing more than one form of tax. *Interstate Buses Corporation v. Blodgett, supra* [276 U. S. 245, 249, 48 S. Ct. 230, 72 L. Ed. 551]; *Dixie Ohio Express Co. v. [State Revenue] Commission, supra* [306 U. S. 72, 59 S. Ct. 435, 83 L. Ed. 495]. *And, as we have said, the aggregate amount of both taxes combined is less than that of taxes heretofore sustained.* In view of these facts there

is not even semblance of substance to appellant's contention that the taxes are excessive." (Italics supplied here.)

The largest tax before us here is in the amount of $580. Considering the life of the vehicles in this case, it is reasonable to suppose that such a vehicle will be in operation for at least five years. Assuming that five years is the standard life of the vehicle, the tax would be $116 a year. In view of the three late decisions of the Supreme Court of the United States just reviewed, *Morf v. Bingaman, supra; Dixie Ohio Express Co. v. State Revenue Commission, supra; Aero Mayflower Transit Co. v. Board of Railroad Commissioners, supra,* we cannot say that the tax here in question must have a specific relationship to road use. When the Supreme Court of the United States said in the case of *Dixie Ohio Express Co. v. State Revenue Commission, supra,* that a yearly tax of from $50 to $75 on equipment not worth $6,000 is not discriminatory or unreasonable, we cannot say that a tax of $116 a year on a vehicle whose value is $29,000 is unreasonable or discriminatory. The amount of the tax here appears to be less than other taxes heretofore sustained by the Supreme Court of the United States. *Aero Mayflower Transit Co. v. Board of Railroad Commissioners, supra.*

In this case no argument, or analysis of statistics in the petitions, has been presented on the question whether the tax, as applied to any particular one of the three cases before us is unreasonable or discriminatory. At the argument in this Court both parties were asked specifically whether the ruling of this Court might be different in one of the cases before us than in another. Neither party made any distinction in this respect. We were informed by the appellees that this was an "industry suit". In the circumstances it does not seem necessary or advisable for us to engage in statistical studies on a possible factual question which has not been raised.

Appellees further contend that the provisions of Section 218 of Article 81 and of Section 293 of Article 56

of the Annotated Code of Maryland render the imposition of the titling tax upon the appellees and others similarly situated invalid.

As Section 293 of Article 56 relates to intrastate carriers, we cannot see how that Section has any bearing on the case before us, except to show that the two sections mentioned do not discriminate against interstate commerce.

Section 218 of Article 81 was first enacted as Chapter 593, Section 199 of the Acts of 1933, and is commonly known as the "seat-mile tax". This Section requires each owner of a motor vehicle to be used in interstate transportation of passengers for hire to pay a tax based on the number of passenger seats in the vehicle. It provided in part: "and no other additional fees, licenses or tax, shall be charged by the State or any County or municipal sub-division of the State except the property tax and gasoline tax on gasoline purchased in Maryland in respect to such vehicles or their operation." The only amendment to that Act is by Chapter 326, of the Acts of 1947, when the only change made was a reduction in the amount of that tax. The aforesaid quoted provision providing that "no other additional fees, licenses or tax, shall be charged" has remained in the Act since 1933 and remains in the Act as re-enacted by Chapter 326, of the Acts of 1947.

Appellees contend that Code, Article 66½, Section 25A, Chapter 560, Section 25A, of the Acts of 1947, here in question, and Code, Article 81, Section 218, Chapter 326, of the Acts of 1947, *supra*, cannot both be applied to the same vehicles and the Legislature never intended that Chapter 560, *supra*, be applicable to carriers subject to the provisions of Chapter 326, *supra*, and, as Chapter 326 provides that no other tax shall be levied, Chapter 560, *supra*, is not applicable to the appellees. Both Chapter 326 and Chapter 560 of the Acts of 1947 were approved by the Governor on April 16, 1947. The appellees say that as Chapter 326 was passed as an emergency measure, and hence became effective on the date of

executive approval (April 16, 1947), and Chapter 560 was not enacted as an emergency measure and hence did not become effective until June 1, 1947, the latter Act, Chapter 560, may be said to be the more recent law of the two acts. They contend that these two Acts patently "contain inconsistent and contradictory provisions, if Chapter 560 is to be construed as applying to carriers subject to the provision of Chapter 326." The appellees further contend that there is nothing in the language of Chapter 560 which repeals the provisions of Chapter 326 and that a repeal by implication is not favored. *Buchholtz v. Hill,* 178 Md. 280, 288, 13 A. 2d 348; *Pressman v. Elgin,* 187 Md. 446, 50 A. 2d 560, 169 A. L. R. 646.

As pointed out by the appellees, where two or more acts of the Legislature are approved by the Governor on the same day, the latter act in numerical order of chapters is considered the last expression of the legislative will. *State v. Davis,* 70 Md. 237, 240, 16 A. 529; *Musgrove v. Baltimore & O. R. Co.,* 111 Md. 629, 75 A. 245. We agree that as between Chapter 326 and Chapter 560, of the Acts of 1947 the latter is the more recent.

If there is any inconsistency between these two acts, Chapter 326 must yield to Chapter 560. This Court has stated on many occasions that the act passed last must prevail. *Davis v. State,* 7 Md. 151, 159, 61 Am. Dec. 331; *Albert v. White,* 33 Md. 297, 305; *Appeal Tax Court v. Western Maryland R. Co.,* 50 Md. 274, 296; *Yunger v. State,* 78 Md. 574, 577, 28 A. 404; *Musgrove v. Baltimore & O. R. Co, supra; Beall v. Southern Maryland Agr. Ass'n,* 136 Md. 305, 312, 110 A. 502. The appellees here admit that Chapter 560 is the more recent law of the two acts. We must therefore hold, to the extent of the conflict between Chapter 326 and Chapter 560, that Chapter 560 prevails and the prohibition of Chapter 326, of the Acts of 1947, cannot apply to the taxes imposed by Chapter 560, of the Acts of 1947.

Appellees further contend that the titling tax, Article 66½, Section 25A, 1947 Supplement of the Code, *supra,* here in question, has never been applied to interstate

vehicles until after the amendment by Chapter 560, of the Acts of 1947, and therefore the construction placed upon that tax by administrative interpretation has obtained the force of law. *Popham v. Conservation Commission,* 186 Md. 62, 71, 46 A. 2d 184; *Bouse v. Hutzler,* 180 Md. 682, 687, 26 A. 2d 757, 141 A. L. R. 843; *Atkinson v. Sapperstein,* 191 Md. 301, 60 A. 2d 737, 740. We must note, however, that in the past the tax here in question has been applied at various times to the "State Emergency Relief Fund" and to the "State Fund for Aid to the Needy" and for the first time by Chapter 560, of the Acts of 1947, the proceeds of this tax have been applied specifically to road purposes. Evidently it was thought that because the tax, here in question, was not applied specifically to road purposes it could not be levied on interstate commerce and for that reason was not levied on the appellees, but now that the tax is specially applied to road purposes, it can be applied to the appellees. This explains the former administrative interpretation.

For the reasons herein given, we are of opinion that the demurrers to the petitions should have been sustained and the petitions of the appellees dismissed.

*Orders reversed, with costs, and petitions dismissed.*