607 A.2d 552

**STATE of Maryland**

v.

**Albert Nathaniel HARRIS.**

**No. 104 Sept. Term, 1991.**

Court of Appeals of Maryland.

June 11, 1992.

Robert E. Cadigan, argued and on brief (Scott M. Rotter, Smith, Somerville & Case, J. Joseph Curran, Jr., Atty. Gen., and Carmen M. Shepard, Asst. Atty. Gen., on brief), Baltimore, for petitioner.

J. Bernard McClellan, argued and on brief (Cohen, Snyder, McClellan, Eisenberg & Katzenberg, P.A., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

MURPHY, Chief Judge.

The Maryland Tort Claims Act (MTCA) was enacted by ch. 298 (Senate Bill 585) of the Acts of 1981, with a delayed effective date of July 1, 1982. It was originally codified as Maryland Code (1980 Repl.Vol., 1983 Cum.Supp.), §§ 5–401 through 5–408 of the Courts and Judicial Proceedings Article.[1]

Section 5–403 of the MTCA waived the State's immunity from liability in tort in a number of specified court actions, to the extent and in the amount that the State is covered by a program of insurance established by the State Treasurer under what is now Code (1988), §§ 9–101 through 9–107 of the State Finance and Procurement Article.[2] Among the cases covered by the State's waiver of immunity under this section was an action "to recover damages caused by the negligent maintenance or operation of a motor vehicle by a State employee." Section 5–403(b) provided that the State's

---

**1.** The MTCA is now recodified as Code (1990 Repl.Vol.), §§ 12–101 through 12–109 of the State Government Article. All citations in this opinion are to the MTCA prior to its recodification.

**2.** Section 9–105(c) of the State Finance and Procurement Article provides that "[t]o the extent that funds are available in the State budget, the Treasurer shall provide sufficient self-insurance, purchased insurance, or both to cover the liability of the State and its units and personnel under the Maryland Tort Claims Act."

immunity in tort is not waived, *inter alia,* as to punitive damages, individual claims in excess of $100,000, or an aggregate of claims arising from the same occurrence in excess of $500,000.

Section 5–406(a) provides that "an action may not be instituted *pursuant to this subtitle* unless the claimant has first presented the claim in writing to the State Treasurer or his designee and the claim has been finally denied." (Emphasis added.) The section further specifies that the failure of the State to notify the claimant of a final denial within six months of receipt of the claim shall, at the claimant's option, be deemed a final denial of the claim. Section 5–406(b) sets forth the necessary contents of a claim filed against the State under the MTCA. Section 5–407(a) states that unless otherwise provided in a contract of insurance with a private insurance carrier, the Treasurer may settle any claim for money damages brought under the MTCA, payment to be made through the State's insurance program.

According to § 5–402(a), it is the intention of the General Assembly that the MTCA "be interpreted broadly to assure that injured parties have a remedy." Under § 5–402(b), the provisions of the MTCA "are intended to be in addition to and not in limitation of any other law waiving the sovereign immunity of the State in tort or authorizing the State to purchase or otherwise provide insurance for tortious conduct."

## I.

Albert Harris alleged that he sustained personal injuries and property damage resulting from a motor vehicle accident which occurred on October 14, 1983 when a vehicle owned by the State and operated by its employee, Thomas Gross, negligently collided with his automobile. On October 10, 1986, Harris sued the State and Gross in the Circuit Court for Baltimore City. Prior to that time, he did not file a claim with the State Treasurer under the MTCA. The

court dismissed Harris's claim for failure to comply with § 5–406 of the MTCA.

Harris appealed. He contended that his suit was not filed under the MTCA, but rather pursuant to the provisions of ch. 250 (Senate Bill 13) of the Acts of 1981, codified as Code (1987 Repl.Vol.), § 17–107(b) of the Transportation Article. At that time, this section provided, in effect, that the State, or other owner of a motor vehicle,

> "may not raise the defense of sovereign or governmental immunity, to the extent of benefits provided by the security accepted by the [Motor Vehicle] Administration under § 17–103 of this subtitle, in any judicial proceeding in which the plaintiff claims that personal injury, property damage, or death was caused by the negligent use of the motor vehicle while in government service or performing a task of benefit to the government."

Harris pointed out that § 17–107(b) took effect July 1, 1981, a full year prior to the effective date of the MTCA, and did not contain any requirement that a claimant file notice of claim with the State Treasurer.

The issue presented to the intermediate appellate court was whether the notice requirement of § 5–406 of the MTCA was applicable to the provisions of § 17–107(b) of the Transportation Article. That court concluded that it was not. *Harris v. Gross*, 87 Md.App. 764, 591 A.2d 575 (1991). The court explained that the MTCA, in § 5–402(b), made clear that its provisions did not "limit any other law that . . . waives the sovereign immunity of the State." *Id.* at 768, 591 A.2d 575. It noted that the MTCA became effective subsequent to § 17–107(b) and had the legislature "intended to superimpose the requirements of the Torts Claims Act on suits permitted by § 17–107(b), it would have done so." *Id.* at 769, 591 A.2d 575. Consequently, the court reversed the judgment of the circuit court, concluding that Harris could bring his action under § 17–107(b) independently of the requirements of the MTCA, and therefore was not required to file notice of his claim with the State Treasurer prior to initiating suit.

We granted certiorari upon the State's petition to consider the significant issue of public importance raised in the case.

## II.

The State argues that the Court of Special Appeals erred in holding (1) that § 17–107(b) waives the State's sovereign immunity and (2) that this section was enacted prior to the MTCA. The State says that the MTCA and § 17–107(b) were both enacted at the 1981 session of the General Assembly and were signed into law on the same day (May 12, 1981) by the Governor. It contends that § 17–107(b) did no more than bar the defense of sovereign or governmental immunity, rather than waive it, in specified cases, whereas the MTCA effectuated a limited waiver of the State's immunity, predicated upon notice being afforded to the State Treasurer prior to filing a tort action in court. In this regard, the State points out that its sovereign immunity can only be waived where two conditions are met: (1) the legislature has authorized a suit for damages against the State and (2) made provision for the payment of a judgment against the State. These conditions are satisfied by the MTCA, according to the State, since that Act, unlike § 17–107(b), provides for a limited waiver of sovereign immunity to the extent of insurance coverage, as well as for the payment of judgments, citing *Simpson v. Moore*, 323 Md. 215, 218, 592 A.2d 1090 (1991).

As to § 17–107(b), the State says that that statute prohibits it, as the owner of the motor vehicle, from raising the defense of sovereign or governmental immunity to the extent of the statutorily mandated minimum insurance coverage acquired by the State Treasurer under § 17–103, or other form of security which provides the same protection. Section 17–107(b) does not, the State observes, speak to the procedures which must be followed prior to the initiation of the tort action. It contends that the procedures, including the written notice of a claim prior to suit, as mandated by the MTCA, are applicable and encompassed within § 17–

107(b). That section, the State maintains, "accomplishes the separate but complementary purpose of assuring that governmental entities buy insurance for their vehicles and denies the State Treasurer discretion in deciding whether to allocate funds for the payment of claims." Moreover, the State suggests that the MTCA's prior notice requirement affords it the opportunity to settle claims for motor vehicle torts before suit is filed. It says that to interpret § 17–107(b), as did the intermediate appellate court, denies the State the necessary mechanism for disposing of claims prior to suit, and it is therefore unreasonable to conclude that the legislature intended that the notice requirement incorporated in the MTCA for tort actions would, as to § 17–107(b), be inapplicable, particularly since both laws were enacted on the same day.

### III.

Our cases make clear that where "two or more acts of the Legislature are approved by the Governor on the same day, the latter act in numerical order of chapters is considered the last expression of the legislative will." *Elgin v. Capital Greyhound Lines,* 192 Md. 303, 317, 64 A.2d 284 (1949). To the same effect, *see Bd. of Fire Comm'rs v. Potter,* 268 Md. 285, 291, 300 A.2d 680 (1973); *Department v. Greyhound,* 247 Md. 662, 667, 234 A.2d 255 (1967). Thus, to the extent of any irreconcilable inconsistency between the MTCA and § 17–107(b), the MTCA, which bears the higher chapter number, prevails over § 17–107(b), which bears the lower chapter number. *Elgin, supra,* 192 Md. at 317, 64 A.2d 284.

In determining whether there is a manifest repugnancy between the two statutes, we first note that during the period from July 1, 1981, when § 17–107(b) became effective, and July 1, 1982, when the MTCA took effect, there could not have been any inconsistency between the two acts. As to the existence of an irreconcilable inconsistency between the two acts after July 1, 1982, we must

presume that the legislature intended that both enactments operate together as a consistent and harmonious body of law and that, whenever reasonably possible, they must be construed to avoid repeal by implication of the earlier statute. *Farmers & Merchants Bank v. Schlossberg,* 306 Md. 48, 61, 507 A.2d 172 (1986). As we said in *Schlossberg,* if two statutes contain an irreconcilable conflict, the statute whose relevant substantive provisions were enacted most recently may impliedly repeal any conflicting provision of the earlier statute. *Id.* It is, however, a fundamental principle that the law does not favor repeals by implication. *Dep't of Nat. Resources v. France,* 277 Md. 432, 460, 357 A.2d 78 (1976). Thus, we have said that a repeal by implication does not occur unless the language of the later statute plainly shows that the legislature intended to repeal the earlier statute. *Montgomery County v. Bigelow,* 196 Md. 413, 423, 77 A.2d 164 (1950); *Pressman v. Elgin,* 187 Md. 446, 450, 50 A.2d 560 (1947). Generally, therefore, a later statute will not be held to repeal an earlier statute by implication unless there is some express reference to the earlier statute. *Gannon & Son v. Emerson,* 291 Md. 443, 455, 435 A.2d 449 (1981); *Kirkwood v. Provident Savings Bank,* 205 Md. 48, 55, 106 A.2d 103 (1954); *Thomas v. State,* 173 Md. 676, 681, 197 A. 296 (1938).

The legislative history file of SB 13, *i.e.,* § 17–107(b), contains a letter from the Maryland Department of Transportation, explaining that the bill "seeks to resolve a problem created by the plea of sovereign immunity when invoked by a self-insured governmental body." The letter states that while the State and many of its subdivisions carry automobile liability insurance, some self-insured political subdivisions do not and have apparently pleaded governmental immunity against tort liability. It was the intent of the bill, according to the letter, to "waive sovereign or governmental immunity as a defense for those entities to the extent of the minimum automobile liability limits required by the financial responsibility laws." Another somewhat cryptic item in the legislative history file, entitled

"Review of Enacted Legislation," states that there is no incompatibility between S.B. 13 and S.B. 585 "but because of procedures and protections available to the State in S.B. 585, this Bill (S.B. 13) should be signed before S.B. 585."

That there is no express reference in the MTCA to § 17–107(b) that might effectuate a repeal by implication of that section is entirely clear. While both statutes deal with the subject of sovereign immunity in the context of a tort action for the negligent operation of a government-owned motor vehicle, § 17–107(b) prohibits the invocation of the sovereign immunity defense only to the extent of the statutorily required minimum security requirements which must be maintained on a motor vehicle. As we observed in *Nationwide v. USF & G*, 314 Md. 131, 135–36, 550 A.2d 69 (1988), this "required security" under the Transportation Article ordinarily is a motor vehicle insurance policy (§ 17–103(a)(1)), although the Administration may accept another form of security in place of an insurance policy (§ 17–103(a)(2)), and may include PIP benefits (§ 17–103(b)(3)), uninsured motorist benefits (§ 17–103(b)(4)), and payment of liability claims (§ 17–103(b)(1), (2)). The MTCA, as we have earlier observed, is a more broadly focused enactment applicable only to the waiver of the State's sovereign immunity. It expressly provides that its provisions are "not in limitation of any other law waiving the sovereign immunity of the State." The MTCA, unlike § 17–103(b), does not focus on security requirements mandated by § 17–103(b) of the Transportation Article, nor does it undertake to regulate the waiver of governmental immunity by counties or municipal governments. That protection is afforded to political subdivisions by the Local Government Tort Claims Act, enacted by ch. 594 of the Acts of 1987, now codified as Code (1989 Repl.Vol.), § 5–401, *et seq.* of the Courts Article.

Section 17–107(b) was repealed and reenacted, with amendments, on several occasions after the enactment of the MTCA and the Local Government Tort Claims Act. *See* ch. 787 of the Acts of 1988 and ch. 546 of the Acts of 1990. These amendments did not alter the substance of § 17–107(b), nor repeal that section's continuing inclusion in the

Transportation Article. The 1990 amendment revised the language of this section, redesignating it as subsection (c), providing in more concise terms as follows:

"(c) *Defense of sovereign immunity.*—An owner or lessee of any motor vehicle registered under Title 13 of this article may not raise the defense of sovereign or governmental immunity as described under § 5–399.4 of the Courts ... Article." [3]

There is absolutely no basis in our view for the State's contention that the MTCA notice of claim requirement as a condition precedent to the waiver of the State's sovereign immunity is somehow implicitly implanted within the provisions of § 17–107(b). In light of the differences between the two statutes, as previously set forth, they may be construed in harmony with each other and thus there is no manifest repugnancy between them that would require us to hold that § 17–107(b) was impliedly repealed after the MTCA became effective on July 1, 1982. In other words, there is no irreconcilable inconsistency between the MTCA, which requires notice of claim prior to the institution of suit, and § 17–107(b), which makes no such requirement. It is sheer folly, we think, for the State to argue that under the verbiage of § 17–107(b), the legislature did not authorize a limited waiver of its sovereign immunity. That section, by its provisions, makes clear that it effectuates a more limited waiver of the State's sovereign immunity without the precondition of timely notice before suit may be instituted.

JUDGMENT AFFIRMED, WITH COSTS.

---

3. Section 5–399.4 of the Courts Article now reads:

"An owner or lessee of any motor vehicle registered under Title 13 of the Transportation Article may not raise the defense of sovereign or governmental immunity, to the extent of benefits provided by the security accepted by the Motor Vehicle Administration under § 17–103 of the Transportation Article, in any judicial proceeding in which the plaintiff claims that personal injury, property damage, or death was caused by the negligent use of the motor vehicle while in government service or performing a task of benefit to the government."