632 A.2d 753

Timothy J. CONDON

v.

STATE OF MARYLAND—UNIVERSITY OF MARYLAND.

No. 23, Sept. Term, 1993.

Court of Appeals of Maryland.

Nov. 1, 1993.

Reconsideration Denied Dec. 15, 1993.

Joseph C. Ruddy, Jr., Hyattsville, for petitioner.

Pamila J. Brown, Asst. Atty. Gen. (J. Joseph Curran, Jr., and Carolyn A. Quattrocki, all on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

MURPHY, Chief Judge.

The Maryland Tort Claims Act (MTCA), Maryland Code (1984, 1993 Repl.Vol.), §§ 12–101 through 12–110 of the State Government Article, waives the State's immunity from tort liability in certain cases, but requires that a claim first be filed

within a designated time period with the State Treasurer as a prerequisite to initiating a law suit against the State. Specifically, § 12–106(b) provides that a claimant may not sue the State under the Act unless:

"(1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 180 days after the injury to person or property that is the basis of the claim;

"(2) the Treasurer or designee denies the claim finally; and

"(3) the action is filed within 1 year after the claim is *denied finally* or 3 years after the cause of action arises, whichever is later."

(Emphasis added.) Section 12–107(d) provides that a claim is "denied finally" by the Treasurer:

"(1) if, by certified mail, return receipt requested, under a postmark of the United States Postal Service, the Treasurer or designee sends the claimant, or the legal representative or counsel for the claimant written notice of denial; or

"(2) if the Treasurer or designee fails to give notice of a final decision within 6 months after the filing of the claim."

The question before us focuses upon the limitations provisions of § 12–106(b)(3) and whether the tort action filed against the State in this case was time-barred under the provisions of this subsection.

I

On April 7, 1987, appellant Timothy J. Condon (Timothy), a student at the College Park campus of the University of Maryland, a State agency, was a passenger on a motorcycle which was involved in a collision with a University shuttle bus driven by a University employee. As a result of the collision, Timothy was thrown from the motorcycle and sustained serious injuries.

Thereafter, on May 22, 1987, Timothy's father telephoned the University and notified it of the accident and of his son's injuries. In a letter dated May 26, 1987, the University

responded to Timothy's father, referring him to the provisions of MTCA; informing him of the requirement that a tort claim against the State of Maryland must be submitted in writing to the State Treasurer within 180 days after the injury; and stating that its letter of acknowledgement did not constitute notice to the State Treasurer of Timothy's claim.

On October 5, 1987, within the MTCA's 180–day filing requirement, Timothy and his parents submitted a detailed written claim to the State Treasurer. They stated that the amount of their claim was not final because the full extent of Timothy's physical injuries had not yet been determined. By letter dated October 15, 1987, the State Treasurer's Office wrote to Timothy and his parents as follows:

"This will acknowledge receipt of your claim which was hand delivered to this office on October 5, 1987. Your claim will be handled by Edward S. Schaffer, Inc. By carbon copy of this letter to Edward S. Schaffer, Inc., I am forwarding to them all documentation you supplied this office. Upon completion of their investigation, they will submit to me their full report with recommendations as to how this claim should be concluded.

"Please note, this letter does not waive any of the State's rights under the Maryland Tort Claims Act."

Five months later, by letter dated March 17, 1988, Schaffer, Inc. wrote the following letter to Timothy's parents:

"This correspondence is to advise you that I am the authorized claims administrator for the State Treasurer's Office and the University of Maryland investigating the incident involving your son, Timothy, on 4/8/87.[1]

"I have reviewed all of the reports that you had submitted to the State Treasurer's Office and [am] requesting more complete information with regards to the treatment admin-

---

1. Correspondence and pleadings from the State noted April 8, 1987, as the accident date. Appellant's correspondence and complaint noted the accident date as April 7, 1987. The one-day difference is of no significance under the facts of this case. However, for discussion herein, we will assume the correct date is April 7, 1987.

istered to your son. All of the expenses that you have claimed with regards to the accident of 4/8/87 are under consideration and I do not feel that there is any problem with reimbursement for these additional expenses.

"I am particularly interested in the medical records from Prince George's County Hospital as well as the records from the treatment rendered by Dr. Patel.

"I also would like additional medical records from Dr. Kothakota.

"If I can be of any further assistance, please do not hesitate to contact me."

Timothy and his parents never responded to this letter and did not submit additional medical information. More than two years later, in late April or early May of 1990, Timothy's attorney contacted Schaffer, Inc., regarding Timothy's claim against the University. After several conversations, Timothy's attorney was informed that the State would invoke a statute of limitations defense to the claim because more than three years had passed since the injury occurred.

Nearly one year thereafter, on March 15, 1991, Timothy filed suit against the University in the Circuit Court for Prince George's County. The University filed a Motion to Dismiss on the ground that limitations had run on Timothy's claim because suit was filed more than three years after the cause of action arose. The trial court (Salmon, J.) treated the motion as one for summary judgment and granted it. Timothy appealed to the Court of Special Appeals; that court affirmed the judgment in an unreported opinion. We granted certiorari to consider the issue of public importance raised by the case. 330 Md. 273, 623 A.2d 655.

## II

In arguing for reversal of the judgment below, Timothy asserts that the Court of Special Appeals erred because it applied too narrow a construction of the limitations provision of the MTCA. In addition, he argues that the court was wrong in finding that a person of reasonable intelligence would

conclude, after reviewing the relevant provisions of the MTCA, that it was necessary to file suit within three years after the date the cause of action arose. And finally, he argues that the intermediate appellate court erred in concluding that agents of the State had not misled him with regard to his claim so as to toll limitations from running against him.

The trial court's decision was based on its finding, as a matter of law, that Timothy failed to comply with the § 12–106(b)(3) deadline to file suit because his complaint was filed more than three years and eleven months after the cause of action arose. Timothy does not dispute that his claim arose on April 7, 1987, the date of the accident, and that suit was filed more than three years after that date. He claims, however, that the relevant limitations determination involves not the three-year period running from the date of injury, but the alternative one-year period which begins to run on the date of "final denial" of the claim by the Treasurer.

As to this one-year period, the State suggests that limitations would bar Timothy's action because § 12–107(d)(2) provides that if written notice of final denial is not received within six months after the filing of a claim, the claim will be deemed finally denied. Thus, the State maintains that Timothy's claim would have been considered finally denied on April 5, 1988, six months after the claim was filed, and he would have had to file suit by April 5, 1989.

Timothy, however, argues that this second limitations period has not yet run because the March 17 letter from Schaffer, Inc., constituted either a final decision of *acceptance* or, at minimum, an open-ended extension of time to submit future medical records and reports while any decision of final denial was still pending; therefore, he argues that his claim could only be denied finally by receipt of a written notice of denial by certified mail from the Treasurer. He maintains, therefore, that final denial of his claim did not occur, pursuant to § 12–107(d)(2), six months after filing the claim.

Timothy asserts that § 12–107 must be interpreted broadly with reference to the language in § 12–106(b)(3), which pro-

vides that an action must be filed within one year after a claim is denied finally or three years after the cause of action arises, *whichever is later.* Because § 12–106 appears to recognize that there are situations in which the one-year period from final denial will come after the three-year period, Timothy argues that it is inconsistent with § 12–107(d)(2), the application of which will always result in a limitations period of under two years from the date of the injury.[2] Thus, he concludes, a reasonable person would not be able to correctly ascertain the requirements of the statute and, therefore, it must be interpreted broadly to avoid violating a claimant's due process rights.

Timothy's final argument is that the State "misled, lured, and/or sandbagged" him into believing that his claim had been accepted and that "time was no longer of essence" regarding any statute of limitations provision. He urges that the positive nature of the March 17 letter from Schaffer, Inc. led him to conclude that his claim had been accepted. As to this, Timothy points out that the letter contained no reference to the MTCA and, unlike the previous correspondence regarding his claim, it contained no express reservation of rights under the MTCA. Instead, he says that it contained a suggestion that there would not be a problem with his claim and, based upon that assurance, he commenced extensive medical treatment and testing to determine the extent of his final injuries, believing that he need only present a final submission of medical reports and expenses related to his claim in order to be paid by the State. We are thus implored to hold that the statute of limitations was tolled by the March 17 letter because the State cannot be allowed to benefit from misleading claimants.

A review of the principles of statutory construction as well as an examination of the statutory development of the MTCA

---

2. This period will always be within two years after the date that the cause of action arose. The claimant must submit a written claim to the Treasurer within 180 days, or approximately six months, after the injury. Final denial will occur no later than six months after the claim is filed, and the action must be filed within one year after final denial.

are necessary for a determination of the proper interpretation of the provisions at issue. Therefore, before addressing Timothy's arguments, we will review these well-established principles, as well as the history of the MTCA, which was enacted in 1981 and thereafter amended several times.

## III

### A

The cardinal rule of statutory construction is to ascertain and carry out the true intention of the legislature. *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 73, 517 A.2d 730 (1986). In searching for legislative intention, a court looks for the general purpose, aim, or policy behind the statute. *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513, 525 A.2d 628 (1987). We first look to the plain meaning of the language of the statute to discern legislative intent. *Tucker, supra,* 308 Md. at 73, 517 A.2d 730. Where the language is clear and unambiguous, a court may not add or delete words to make a statute reflect an intent not evidenced in that language, *State v. In Re Patrick A.*, 312 Md. 482, 487, 540 A.2d 810 (1988), to avoid a harsh result, *Simpson v. Moore*, 323 Md. 215, 225, 592 A.2d 1090 (1991); *Cotham and Maldonado v. Board*, 260 Md. 556, 565, 273 A.2d 115 (1971). A clearly worded statute must be construed without "forced or subtle interpretations" that limit or extend its application. *Tucker, supra,* 308 Md. at 73, 517 A.2d 730; *Wheeler v. State*, 281 Md. 593, 596, 380 A.2d 1052 (1977), *cert. denied,* 435 U.S. 997, 98 S.Ct. 1650, 56 L.Ed.2d 86. The language must be examined in the context in which it was adopted. *Motor Vehicle Admin. v. Mohler,* 318 Md. 219, 225, 567 A.2d 929 (1990). All parts of a statute are to be read together to determine intent, and reconciled and harmonized to the extent possible. *Wheeler, supra,* 281 Md. at 596, 380 A.2d 1052. If reasonably possible, a statute should be read so that no part of it is rendered nugatory or superfluous. *Board of Educ., Garrett Co. v. Lendo,* 295 Md. 55, 63, 453 A.2d 1185 (1982). Where a statute may be susceptible of more than one meaning, the court may consider the conse-

quences of each meaning and adopt that construction which avoids a result that is unreasonable, illogical or inconsistent with common sense. *Kaczorowski, supra,* 309 Md. at 513, 525 A.2d 628. It often is necessary to look at the development of a statute to discern legislative intent that may not be as clear upon initial examination of the current language of the statute. *See, e.g., Mohler, supra,* 318 Md. at 225–27, 567 A.2d 929.

### B

By waiving the State's tort immunity, the MTCA afforded a remedy for individuals injured by tortious conduct attributable to the State. Grounded in ancient common law, the doctrine of sovereign immunity bars individuals from bringing actions against the State, thus protecting it from interference with governmental functions and preserving its control over its agencies and funds. *Katz v. Washington Sub. San. Comm'n,* 284 Md. 503, 507, 397 A.2d 1027 (1979). The doctrine is applicable to the State's agencies and instrumentalities, unless the legislature has explicitly or by implication waived governmental immunity. *Godwin v. County Comm'rs,* 256 Md. 326, 334, 260 A.2d 295 (1970).

For many years, this Court has held that the State and its agencies could not be sued unless the General Assembly authorized suit and enabled State agencies to obtain funds necessary to satisfy judgments. *See, e.g., Board v. John K. Ruff, Inc.,* 278 Md. 580, 366 A.2d 360 (1976); *University of Maryland v. Maas,* 173 Md. 554, 197 A. 123 (1938).

The General Assembly enacted the MTCA, by Chapter 298 of the Acts of 1981.[3] It established a limited waiver of the State's immunity in certain tort actions to the extent that the State was covered by a program of insurance established

---

3. The effective date of the Act was July 1, 1982. It was originally codified as Maryland Code (1980 Repl.Vol., 1983 Cum.Supp.), §§ 5–401 through 5–408 of the Courts and Judicial Proceedings Article. In 1984 the Act was amended and recodified as Maryland Code (1984 Repl.Vol.) §§ 12–101 through 12–109 of the State Government Article. The current version is found in Maryland Code (1993 Repl.Vol.), §§ 12–101 through 12–110 of the State Government Article.

by the State Treasurer. As originally enacted, the MTCA provided certain procedural restrictions on filing suit against the State.[4] The Act specified that suit could be filed only after first presenting a claim in writing to the State Treasurer and waiting until the claim was finally denied; that the claimant could, but was not required to, consider a claim finally denied if the Treasurer did not notify the claimant of final denial by certified mail within six months; and that the filing of a claim tolled the applicable statute of limitations until sixty days following a final denial if the claim was made within the applicable period of limitations. Thus, under the original MTCA, a claimant could file a claim at any time within the three-year limitations period after the cause of action arose. Then, upon receiving a final denial, the claimant had an additional sixty days in which to file suit. If the claimant did not receive a final denial within six months of filing the claim, the claimant could consider the claim to be finally denied, or could instead wait for written notice of final denial. Therefore, a claimant under the 1981 Act could file suit well beyond three years after a cause of action arose, depending upon when the claim was filed and when final denial was received.

---

**4.** The relevant portions of the original Act are set forth below:

§ 5-406 ...

"(a) *Presentation and denial of claim.*—(1) Except as provided in paragraph (2) of this subsection, an action may not be instituted pursuant to this subtitle unless the claimant has first presented the claim in writing to the State Treasurer or his designee and the claim has been finally denied. A final denial shall be in writing sent to the claimant by certified mail, return receipt requested, bearing a post-mark from the United States Postal Service. The failure of the State to notify the claimant of a final denial within 6 months of receipt of the claim shall, at the option of the claimant, be deemed a final denial of the claim for purposes of this section.

"(2) The provisions of paragraph (1) of this subsection do not apply to claims asserted under the Maryland Rules of Procedure by cross-claim or counterclaim.

"(3) The filing of a claim tolls the applicable statute of limitations until 60 days following a final denial if the claim was made within the applicable period of limitations."

The recodification of the Act in 1984 changed the format of these provisions but left them substantively unchanged. *See* Maryland Code (1984), §§ 12-105 through 12-107 of the State Government Article.

By Chapter 538 of the Acts of 1985, the General Assembly enacted amendments to the MTCA, which broadened the State's liability by extending the waiver of immunity to tort actions generally. While broadening the scope of the waiver, however, the legislature narrowed the time in which claimants could file claims or bring actions under the MTCA.

The 1985 amendments reduced the time for filing a claim with the State Treasurer from three years to 180 days after the date of the injury. In addition, the amendments tightened time restrictions on filing suits against the State, requiring that claimants do so within one year after final denial of the claim by the Treasurer or three years after the cause of action arose, whichever is later. And, finally, the legislature deleted the language that allowed claimants the option of when to consider a claim denied. As earlier observed, prior to the 1985 amendments, a claim was finally denied if the Treasurer, by certified mail, so gave written notice of the denial to the claimant, or *"at the option of the claimant,* if the Treasurer or designee [failed] to give the claimant notice of a final decision within 6 months after the filing of the claim." (Emphasis added.)

As the language "at the option of the claimant" was deleted from § 12–106(d)(2) in the 1985 amendments, it appeared to make absolute the date of final decision in situations where written notice is not received from the Treasurer. Therefore, under the language of the current § 12–106, the limitations period triggered by final denial will always begin to run no later than six months after the filing of the claim.

## IV

### A

We turn now to Appellant's first argument, namely, that § 12–106(b)(3), which provides that a claimant must file an action within one year after a claim is finally denied or three years after a cause of action arose, whichever is later, cannot be reconciled with § 12–107(d)(2); that subsection, as

earlier noted, provides that a claim is finally denied six months after it is filed if no written denial is received. As to this, Timothy observes that if the language of § 12–107(d)(2) is interpreted strictly, the one-year limitations period will always end before the three-year period. Moreover, he argues that unless given effect by a different interpretation, the "whichever is later" language will be rendered mere surplusage. In this regard, Timothy reminds us of the well-established principle of statutory construction that, if reasonably possible, a statute should be read so that no part of it is rendered nugatory or superfluous. *See, e.g., Lendo, supra*, 295 Md. at 63, 453 A.2d 1185. He contends, therefore, that it must have been the intent of the legislature that the language of § 12–107(d)(2) be construed broadly to encompass situations such as the instant case, and that it is under these facts that the one-year limitation period would extend beyond the three-year period. In support of his position, Timothy emphasizes that § 12–102 provides that the MTCA is to be construed broadly to ensure a remedy for injured parties, and that the cases are in accord.

He relies upon *State v. Harris*, 327 Md. 32, 607 A.2d 552 (1992); *Conaway v. State*, 90 Md.App. 234, 600 A.2d 1133 (1992); and *Foor v. Juvenile Services*, 78 Md.App. 151, 552 A.2d 947 (1989) in which this Court and the Court of Special Appeals have reaffirmed the proposition that the MTCA be broadly construed.

*Harris* involved a question of whether the notice requirement of the MTCA applied to an earlier enacted statute, Maryland Code (1987 Repl.Vol.), § 17–107(b) of the Transportation Article,[5] which barred the defense of sovereign immunity to the extent of the statutory minimum security requirements for state-owned motor vehicles. In stating that the MTCA was broadly focused, we did so to distinguish it from § 17–107(b). We held that § 17–107(b) established a more limited waiver of the State's immunity, without the precondi-

---

5.  The current version of this provision is found in Maryland Code (1992 Repl.Vol.), § 17–107(c) of the Transportation Article.

tion of timely notice before suit was filed. *Id.* 327 Md. at 41, 607 A.2d 552. We recognized that the provisions of the MTCA were intended to be in addition to, and not in limitation of, any other law waiving the immunity of the State in tort actions. *Id.* at 35, 607 A.2d 552. Thus, we declined to implant within the provisions of § 17–107(b) the notice requirement of the MTCA, explaining that there was no manifest repugnancy between the two statutes that would require us to hold that § 17–107(b) was impliedly repealed by the MTCA. *Id.* at 41, 607 A.2d 552.

*Conaway* involved a claim against the State for allegedly negligent medical treatment of a State prison inmate. The prisoner filed a timely claim, but did not make demand for specific damages, as required in § 12–107(a)(2) of the MTCA. The Court of Special Appeals held that substantial compliance with the MTCA notice provision was sufficient to satisfy the condition precedent to the waiver of sovereign immunity, *id.* 90 Md.App. at 242, 600 A.2d 1133, and further defined substantial compliance to be such communication that provides the State "requisite and timely notice of facts and circumstances giving rise to the claim," *id.* at 246, 600 A.2d 1133.

In *Foor*, the intermediate appellate court held that the expanded coverage of the MTCA, by the 1985 amendments to the Act, applied to an action filed after its effective date of July 1, 1985, although the cause of action accrued before that date. The court reasoned that the Act contained no provision limiting it to prospective application only, although earlier enactments waiving immunity did contain such limiting language. The court concluded that the legislature intended the expanded waiver to apply to actions filed, as well as those accruing, on or after the effective date of the Act. *Id.* at 163–64, 552 A.2d 947.

These cases plainly reflect a judicial recognition of the intent of the legislature to construe the MTCA broadly so that injured parties will be ensured a remedy. They are not, however, helpful in addressing the issue in the instant case.

In this case, we are asked not to apply the broad construction mandate to derive legislative intent where intent is not clear from the language of the statute, but instead to infer an intent where the legislature has clearly indicated the contrary. We are asked, in effect, to apply a provision which the legislature expressly deleted from the MTCA in its 1985 amendments, that is, the provision allowing the claimant the option of when to consider the claim finally denied.

In *Simpson v. Moore,* 323 Md. 215, 592 A.2d 1090 (1991), we declined to engraft an exception onto the 180–day filing requirement of § 12–106(a)(1). It was there urged upon us that the legislature must have intended the requirement to carry the same escape provision as that contained in § 5–306 of the Courts Article, which waived the notice requirement for good cause shown and in the absence of prejudice to the defendant.[6] In support of this position, the plaintiff there pointed to material in the legislative file on the proposed bill to amend the MTCA that the language added to require notice of the claim within 180 days was comparable to the 180–day period specified in § 5–306. In declining to judicially incorporate the § 5–306 provision into the MTCA, we stated that the legislature could have done so, if it wished, when it amended the MTCA. Because it did not do so, we declined to judicially place that language in the statute. *Id.* at 225, 592 A.2d 1090. In *Simpson,* the plaintiff pointed also to § 12–102 of the MTCA, which provides that the Act be construed broadly to ensure a remedy for injured parties. We stated that § 12–102 could not serve as a "springboard for judicial legislation," and that while such a provision could be helpful in resolving ambiguities, it did not permit us to "expand the statute to afford relief where the words of the statute bar that relief." *Id.* at 227, 592 A.2d 1090.

These words have even greater application in the case now before us where not only do the words of the statute bar the

---

6. Section 5–306, then codified in the 1984 Repl.Vol. of the Courts Article, dealt with a 180–day notice provision applicable to claims for unliquidated damages made against a county or municipal corporation.

relief sought by the claimant, but the development of the statute shows that the legislature rejected the sought-for interpretation by removing that language when the Act was amended in 1985. Although the legislative bill file contains no helpful comments regarding the deletion of the language, "at the option of the claimant," the fact that the legislature actually deleted that language leads to the conclusion that it intended to remove the discretion from the claimant for the purpose of limiting the period of time in which claimants could file actions against the State. We recognize that a literal interpretation leaves this provision unreconciled with § 12–106(b)(3), which appears to suggest that the one-year period from denial can end after the three-year limitation period. We also recognize that all parts of a statute should be read together to determine intent, and reconciled to the extent possible, *Wheeler, supra,* 281 Md. at 596, 380 A.2d 1052, and that, if reasonably possible, a statute should be read so that no part of it is rendered nugatory or superfluous, *Lendo, supra,* 295 Md. at 63, 453 A.2d 1185. We cannot, however, reasonably conclude that, in removing the discretionary language, the legislature nonetheless intended that the language of § 12–107(d)(2) should not dictate an absolute time frame for final denial.

As we stated in *Simpson,* it is difficult to give clear meaning to all the language of § 12–106(b)(3).[7] But given the plain and unambiguous meaning of § 12–107(d)(2), we cannot add words to reflect an intent not evident in the language, *In Re Patrick A., supra,* 312 Md. at 487, 540 A.2d 810, or in the development of the statute, to limit its application for the purpose of forcing it into consistency with § 12–106(b)(3).

---

7. The State suggests that the one-year limitations period could run later than the three-year period if the Treasurer were to offer a final settlement and then renege on the settlement. Alternatively, it says that the Treasurer and claimant could agree to extend the six-month "denial" period in order to investigate a claim further, and then the Treasurer could ultimately deny the claim more than three years after the cause of action arose.

## B

■ Nor do we find merit in Timothy's next argument, namely, that the Court of Special Appeals erred in holding that a person of reasonable intelligence would conclude, after reviewing the relevant provisions of the MTCA, that it was necessary to file suit within three years after the date the cause of action arose. As we see it, the claimed inconsistency between §§ 12–106(b)(3) and 12–107(d)(2) does not render the statute so vague and ambiguous that it violates the due process provisions of the United States Constitution and the Maryland Declaration of Rights.

■ A statute violates due process requirements if it forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. *Connally v. General Const. Co,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). This "fair notice" principle affords individuals a reasonable opportunity to know what is prohibited or required so that they may govern their behavior accordingly. *Williams v. State,* 329 Md. 1, 8, 616 A.2d 1275 (1992). The MTCA is not so vague that a person of reasonable intelligence would be unable to ascertain its meaning. Section 12–107(d)(2) states that a claim is finally denied six months after it is filed if no written denial is received. Section 12–106(b)(3) states that a claim must be brought within one year after final denial or three years after the cause of action arose, whichever is later. It is explicit that if the three-year deadline comes after the one-year deadline, then the three-year deadline is the final deadline. One does not have to guess at the meaning of this language. Although it may not be altogether clear how the three-year deadline could ever come before the one-year deadline, a person of reasonable intelligence could interpret and comply with the plain language of the statute without having to resolve this question.

## C

■ Finally, there is no merit in Timothy's argument that the Court of Special Appeals erred in concluding that agents

of the State had not misled him with regard to his claim so as to toll limitations from running against him. In this regard, we have considered cases brought under the Federal Tort Claims Act, upon which Timothy places reliance, where limitations were tolled because claimants were misled by government representatives with respect to their claims. These cases involve situations in which plaintiffs alleged active concealment of material facts by the government, *Barrett v. United States,* 689 F.2d 324 (2d Cir.1982); *Liuzzo v. United States,* 485 F.Supp. 1274 (E.D.Mich.1980). Other cases presented situations in which plaintiffs were excused from the prerequisite filing and final disposition of a claim against the government when they were unaware until after they sued an individual that the government was the proper defendant, *Kelley v. United States,* 568 F.2d 259 (2d Cir.1978); *Chambly v. Lindy,* 601 F.Supp. 959 (N.D.Ind.1985). Each of these cases involved plaintiffs who were prevented from complying strictly with the statute because they were unable, through no lack of diligence of their own, to gain the information necessary to file a claim or bring suit against the government in a timely fashion.

Unlike these cases, there exists no allegation of concealment or lack of access to information in the present case. We do not share Timothy's view that he was reasonably diligent in pursuing his claim. He never responded to the March 17, 1988 letter from the claims adjuster requesting additional information; indeed, it was more than two years later that Timothy's attorney contacted Schaffer, Inc. regarding the claim. Moreover, Timothy's contention that the March 17 letter misled him into believing that his claim was accepted, and that he need no longer concern himself with the limitations provision, is not well founded in view of the Act's provisions. Timothy's claim of October 5, 1987 clearly stated that it was not a final claim because the full extent of his injuries had not yet been determined. Although it complied with the 180–day claim-filing provision, Timothy's claim did not provide the necessary information required to render a final decision of acceptance or denial. Schaffer's letter of

March 17 requested more complete medical information, including reports from particular physicians. It stated that all expenses claimed were "under consideration." Moreover, it was explicitly stated in the October 15, 1987 letter from the State Treasurer's Office that upon completion of its investigation, Schaffer, Inc. would submit a report and recommendations to the Treasurer's Office, making it clear that the Treasurer's Office would ultimately accept or deny the claim.

Neither could Schaffer's letter of March 17 requesting copies of medical reports reasonably be construed as an open-ended extension of time that would render § 12–107(d)(2) inoperative and effectively toll limitations indefinitely. In so concluding, we have considered the language in the Schaffer, Inc. letter: "I do not feel that there is any problem with reimbursement for these additional expenses." This statement followed a request for additional information necessary for the settlement of the claim. As we interpret it, the most it assured Timothy was that the expenses claimed to date appeared to Schaffer to be appropriate. It did not promise payment of the claim, and there is no evidence of any communication or other behavior on the part of the State that was intended to mislead Timothy and his parents into believing that the claim had been accepted for payment.

Accordingly, we hold that summary judgment was properly entered and affirmed in this case.

*JUDGMENT AFFIRMED, WITH COSTS.*

ROBERT M. BELL, J., concurs in the result only.