Alice J. PAVELKA, Plaintiff–Appellant,

v.

Susan R. CARTER;  Montgomery County,
Maryland, Defendants–Appellees.

No. 92–1887.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 4, 1993.

Decided June 9, 1993.

James Berkley Carson, Carson & Jones–Bateman, Baltimore, MD, argued (John B. Jones–Bateman, on brief), for plaintiff-appellant.

Patricia P. Hines, Associate County Atty., Rockville, MD, argued (Joyce R. Stern, County Atty., Joann Robertson, Sr. Asst. County Atty., on brief), for defendants-appellees.

Before ERVIN, Chief Judge, and HALL and PHILLIPS, Circuit Judges.

## OPINION

PHILLIPS, Circuit Judge:

Alice Pavelka appeals from a grant of partial summary judgment against her and the dismissal of the remainder of her automobile negligence action against Susan Carter and Montgomery County, Maryland for lack of sufficient amount in controversy to maintain diversity jurisdiction. Because the district court erred in holding that governmental immunity barred recovery against the defendants of amounts in excess of $30,000, we reverse.

### I

The material facts, viewed in the light most favorable to the nonmovant Pavelka on this appeal from summary judgment against her, are few. On May 5, 1989, Pavelka's car was struck from behind by a car which had itself been struck by a bus owned by appellee Montgomery County, Maryland. The bus was being operated within the County by the appellee Carter, an employee of its Ride–On bus service.

On September 9, 1991, Pavelka, a citizen and resident of Virginia, brought a diversity action in the District of Maryland against the County, a governmental unit of the State of Maryland, and Carter, a Maryland resident, seeking $200,000 in compensation for property damage and personal injuries. The defendants answered, then moved for partial summary judgment, interposing a statutory governmental immunity defense ostensibly limiting claims to $20,000 per injured party and $10,000 in total property damage. After Pavelka answered the motion, pressing a different interpretation of Maryland law on governmental immunity, and the defendants replied, the district court granted defendants the relief they sought. Because that relief limited Pavelka's potential recovery to $30,000, the district court then dismissed the cause for failure to meet the $50,000 amount in controversy requirement of diversity jurisdiction. *See* 28 U.S.C. § 1332.

Pavelka appealed.

### II

This case presents a question of the degree to which the defendants enjoy governmental immunity in this negligence action for money damages and requires us to determine how best to harmonize three aspects of Maryland law: the Maryland common law of local governmental immunity, Maryland Transp.Code Ann. § 17–107(c) [1], and the Local Government Tort Claims Act (LGTCA), Maryland Cts. & Jud.Proc.Code Ann. § 5–401 *et seq.* In making that determination, we consider first the immunity of the County, then that of the bus driver Carter.

### A

With respect to the County there are actually two questions. First, we ask whether it enjoyed governmental immunity with respect

1. The parties refer to § 17–107(b), but the relevant provision was apparently redesignated § 17–107(c) effective July 1, 1988, before Pavelka's 1989 accident. 1988 Md.Laws 787. Since her accident, it's been amended again, 1990 Md. Laws 546, § 3, but that amendment has no effect on this appeal, so the text is presented as it was in effect at the time of the accident.

to Pavelka's accident in the first place. After finding that it did, we then consider the extent to which it waived that immunity or otherwise obligated itself with respect to Pavelka's claim.

### 1

■ Counties in Maryland have governmental immunity in negligence actions only when the activity concerning which suit is brought is a governmental and not a proprietary one. *Maryland–Nat'l Capital Park and Planning Comm'n v. Kranz*, 521 A.2d 729, 731 (Md.1987).[2] *Mayor of Baltimore v. State ex rel. Blueford*, 173 Md. 267, 195 A. 571, 576 (1937), explains the difference between the two:

> Where the act in question is sanctioned by legislative authority, is solely for the public benefit, with no profit or emolument inuring to the municipality, and tends to benefit the public health and promote the welfare of the whole public, and has in it no element of private interest, it is governmental in its nature.

The Maryland Court of Appeals recently has put it more simply:

> Another way of expressing the test ... is whether the act performed is for the common good of all or for the special benefit or profit of the corporate entity.

*Tadjer v. Montgomery County*, 300 Md. 539, 479 A.2d 1321, 1325 (1984).

■ The heavily subsidized nature of the Ride–On service, *see* Joint Appendix at 68, makes clear that it exists for "the common good of all" and not for the special benefit or profit of the County as a corporate body. It is undoubtedly authorized by the legislature, 25A Maryland Ann.Code § 5A(a); Maryland Transp.Code Ann. § 10–207(a), and we take judicial notice that public transportation in general, and thus the Ride–On bus service in particular, benefits the public health and welfare in a variety of well established ways. Moreover, it has no obvious element of private interest. Given the breadth of governmental activities recognized by the Maryland courts, *see, e.g., Burns v. Mayor of Rockville*, 71 Md.App. 293, 525 A.2d 255, 262 (1987) (civic ballet); *Austin v. Mayor of Baltimore*, 286 Md. 51, 405 A.2d 255, 263 (1979) (children's day camp); *see also Town of Brunswick v. Hyatt*, 91 Md.App. 555, 605 A.2d 620, 625 (1992) (finding municipal pool a governmental activity even though it made a profit), there is no doubt that municipal bus service qualifies for similar treatment.[3] Governmental immunity therefore applies, and Pavelka can recover damages from the County only to the extent it has waived that immunity. We therefore turn to that issue.

### 2

■ The County concedes that Maryland Transp.Code Ann. § 17–107(c) waives any governmental immunity that it otherwise might assert with respect to the security that state law requires all vehicle owners or lessees, including governmental ones, to post. That security is $20,000 per person per accident ($40,000 total) and $10,000 in total property damage. Maryland Transp.Code Ann. § 17–103(b). The County argues, however, that § 17–107(c) is the only waiver of its liability applicable in this case, making partial summary judgment for it on all liability over and above that required security and the resulting dismissal for lack of subject matter jurisdiction proper.

> *Higgins v. City of Rockville*, 86 Md.App. 670, 587 A.2d 1168, *cert. denied*, 323 Md. 309, 593 A.2d 669 (1991). There the court found that maintenance of a state-owned driveway was a proprietary function, but its holding was based on *stare decisis*, not policy, and was strictly limited to liability for negligent maintenance of streets, sidewalks, footways, and adjacent areas. *Id.* at 1173 (noting that "[t]he exemption of this particular function from the benefits of governmental immunity, logical or illogical, seems destined to remain with us for the foreseeable future." (footnote omitted)). That anomaly is not relevant here.

---

**2.** The County argues that we need not reach the governmental/proprietary function inquiry at all, since (it argues) waiver of governmental immunity turns exclusively on whether the conditions of § 17–107 of the Md.Transp.Code Ann. are met. This is incorrect. The governmental/proprietary function question is logically antecedent to the waiver inquiry, since it determines whether counties have tort immunity at all under Maryland law, *Kranz*, 521 A.2d at 731, not whether they've waived it.

**3.** The only case cited by Pavelka finding a particular activity not to be governmental in nature is

Pavelka, on the other hand, contends that the Local Government Tort Claims Act, Maryland Cts. & Jud.Proc.Code Ann. § 5–401 *et seq.*, operates concurrently with § 17–107 and, where its notice requirements are met, *see* § 5–404, makes a more substantial waiver of the County's immunity. Since she undoubtedly complied with those notice provisions, Pavelka contends, she should be permitted to recover from the County the full $200,000 the LGTCA permits. *See* § 5–403(a). This argument relies heavily on *Maryland v. Harris*, 327 Md. 32, 607 A.2d 552 (1992), which implied that the Maryland Tort Claims Act (MTCA), Maryland State Gov't Code Ann. §§ 101 to 12–110, creates a more expansive waiver of immunity distinct from that provided by § 17–107 in those situations where it applies.[4] *Harris*, 607 A.2d at 556–57.

But the MTCA actually waives the state's sovereign immunity in such negligence cases if its notice requirements are met. § 12–104(b); § 12–105(b). The LGTCA does not waive local governmental immunity when a local governmental entity is sued in its own capacity, *Khawaja v. Mayor of Rockville*, 89 Md.App. 314, 598 A.2d 489, 494 & n. 6 (1991), *cert. granted*, 325 Md. 551, 601 A.2d 1114 (1992),[5] so the logic of *Harris* is inapplicable. The County's direct liability for Pavelka's accident is thus limited to that provided by § 17–107.

■ The LGTCA does have a function, however, and that function is to protect local government employees from suits and judgments on alleged torts committed by them within the scope of their employment, in order to maintain their incentive to perform to the best of their abilities. *Ennis v. Crenca*, 322 Md. 285, 587 A.2d 485, 488 (1991). To that end, it obligates local governments to defend their employees for job-related tort claims. § 5–402(a). It also bars direct execution of judgments against those employees, absent proof of actual malice, and forces successful plaintiffs to execute their judg-

ments against the local government employers instead. §§ 5–402(b), 5–403(b). The employers are expressly obligated to pay these judgments, § 5–403(b), but their obligations are not without limit: liability on an individual claim is limited to $200,000, § 5–403(a), punitive damages cannot be recovered, § 5–403(c), and the employer may raise any defenses or immunities held by the employee, even where those defenses or immunities could not have been vicariously asserted by the employer to bar *respondeat superior* liability at common law. *Compare* § 5–403(d)-(e) *with* the Maryland common law rule discussed in *James v. Prince George's County*, 288 Md. 315, 418 A.2d 1173, 1182–83 (1980), *superseded by statute as stated in Prince George's County v. Fitzhugh*, 308 Md. 384, 519 A.2d 1285 (1987).

The County doesn't debate the existence of this obligation to fund judgments against its employees imposed by the LGTCA, but pins its hopes instead on the claim that its bus driver Carter is herself immune from suit, hence not subject to a liability which would trigger its obligation. We therefore turn next to that.

**B**

■ The district court found Pavelka's claim against Carter barred by § 17–107(c), but we disagree, for the reasons expressed below.

■ Governmental immunity from negligence torts in Maryland extends beyond the governmental entity itself to protect "public officials" exercising discretionary functions. *James*, 418 A.2d at 1178. It does not, however, extend to "mere government employee[s] or agent[s]" performing ministerial functions like Carter, a city bus driver. *Id.*

On appeal, Carter does not in fact contend that driving a bus was a discretionary function or that she was a public official. Indeed, she ignores this line of cases altogether and

---

**4.** The MTCA concerns state sovereign immunity; the LGTCA addresses the more limited doctrine of local government immunity.

**5.** The Court of Appeals' writ of *certiorari* did not specify which questions presented by petitioner it

would address. One of those questions could be read to raise the issue whether the LGTCA does in fact constitute an independent waiver of governmental immunity, but that is not now the law of Maryland.

argues that notwithstanding any general rules applicable to employee liability, fidelity to the purpose of § 17–107 requires that she be absolved of potential liability in excess of the security required by the Transportation article. She also argues that the claim against her is barred by the doctrine of *respondeat superior*.

Both these arguments are mistaken. Perhaps recognizing that § 17–107(c), by its terms, does not apply to her, Carter rests her argument that it nonetheless bars action against her primarily on policy grounds. Failing to read § 17–107(c) to bar suit against her would generate an absurd result, she says, because Pavelka could then evade what appellees contend is a cap on the County's liability imposed by § 17–107 by seeking up to $200,000 from Carter under the LGTCA, which the County would then be required to pay. The result is only absurd, however, if § 17–107(c) is indeed a cap on the County's direct and indirect liability to Pavelka.

We don't believe it is. Section 17–107(c) is part of the title requiring most vehicle owners to carry minimal insurance coverage. Md.Transp.Code Ann. § 17–101 *et seq.* Its caption reads "Prohibitions," and the section bars two things. First, it forbids drivers to drive cars they know are uninsured and owners to permit their uninsured vehicles to be driven. § 17–107(a). Second, it provides

> *Defense of Sovereign Immunity.*—An owner or lessee of any motor vehicle registered under Title 13 of this article may not raise the defense of sovereign or governmental immunity, to the extent of benefits provided by the security accepted by the Administration under § 17–103 of this subtitle, in any judicial proceeding in which the plaintiff claims that personal injury, property damage, or death was caused by the negligent use of the motor vehicle while in government service or performing a task of benefit to the government.

§ 17–107(c). As we read this latter provision, it merely prevents Maryland's governmental entities from interposing the governmental or sovereign immunity they might

otherwise enjoy to frustrate otherwise proper recovery against the mandatory security all vehicle operators (including governmental ones) must post. To the extent of that security, then, it puts governmental vehicle owners or lessees in the same position as private owners or lessees. And by its terms, at least, it says nothing whatsoever about the liability of vehicle *operators* like Carter.

■ As we noted at the outset, this dispute requires accommodation of two statutes and a common law doctrine. It seems to us that this accommodation is relatively straightforward. The doctrine of governmental immunity reflects the public's interest in not paying tort judgments with public funds for torts arising out of the performance of governmental functions for the benefit of all.[6] The Maryland legislature, however, has recognized that other policy considerations trump this one in certain cases. One such case is that of providing minimal recovery for vehicular accidents, where the legislature has privileged, to a limited extent, citizens' interest in securing compensation for injuries negligently inflicted upon them. That policy is embodied in Maryland Transp.Code Ann. § 17–101 *et seq.* The other case of relevance here is that of protecting ordinary local government employees, who enjoy no common law immunity from liability for their negligent but good faith acts in the scope of employment, from tort suits which might discourage vigorous prosecution of their duties. Maryland could, of course, have furthered this goal at the expense of tort victims by simply extending governmental immunity to those tortfeasors, but it chose not to do it that way, presumably because the traditional tort system goals of compensating victims and deterring misconduct remained important. Instead, it simply shifted the cost of employee negligence in such cases to a party better able to pay, their local government employer, compromising in the process the public interest described above in keeping tort victims out of the public purse. This is the policy reflected in the LGTCA. With that framework in mind, we see no reason why the policy considerations which undoubt-

---

6. Until the enactment of the LGTCA, the public generally had not been deemed to have an inter-

est in insulating local government *employees* from the consequences of their negligence.

edly led to the enactment of § 17–107 should lead us to provide Carter (and thus, indirectly, the County) with a cloak of immunity similarly situated parties have never enjoyed in Maryland.

 This brings us to the appellees' more direct assertion of the same logic, their apparent contention that the doctrine of *respondeat superior* also bars Pavelka's claim. It is true, as Carter and the County argue, that this doctrine imputes the negligence of the servant to the master and makes the latter liable for the torts of the former. *Dhanraj v. Potomac Elec. Power Co.*, 305 Md. 623, 506 A.2d 224, 226 (1986). But that liability is joint and several; the servant is not relieved. *See Chilcote v. Von Der Ahe Van Lines*, 300 Md. 106, 476 A.2d 204, 208 (1984). Moreover, the doctrine is one of vicarious liability, not vicarious immunity, so any immunity the County may enjoy does not, absent the operation of some other principle of law, protect Carter. No other such principle has been suggested.

Carter therefore is potentially liable for her negligence just like any other civil defendant. Unlike most civil defendants, however, she enjoys the protection of the LGTCA, which bars Pavelka from actually executing any judgment obtained against Carter and forces her to execute instead against the County, which is then obligated to satisfy Pavelka's adjudicated claim against Carter in an amount up to $200,000.

### III

Because Carter is liable in damages for any negligence on her part which proximately caused Pavelka's injury, and because the LGTCA obligates Pavelka to execute any judgment obtained on that claim against the County rather than Carter herself and also obligates the County to satisfy it up to $200,-000, partial summary judgment for Carter and the County on amounts over § 17–103's statutory security requirements was inappropriate, as was dismissal for lack of subject matter jurisdiction. The judgment of the district court is therefore reversed and the cause remanded for further proceedings consistent with this opinion.

*REVERSED AND REMANDED.*