933 A.2d 495

Calvin B. EDWARDS, Jr., et al.

v.

MAYOR AND CITY COUNCIL OF BALTIMORE.

No. 2299, Sept. Term, 2004.

Court of Special Appeals of Maryland.

Sept. 28, 2007.

448

Robert A. Suls of Towson, for appellant.

Kurt Heinrich (Ralph S. Tyler, City Solicitor, William R. Phelan, Jr., Principal Counsel on the brief), Baltimore, for appellee.

Argued before KENNEY, WOODWARD, LAWRENCE F. RODOWSKY, (Retired, Specially Assigned), JJ.

WOODWARD, J.

This appeal arises from a declaratory judgment of the Circuit Court for Baltimore County that appellee, the Mayor and City Council of Baltimore ("the City"), is not required to defend or indemnify appellant, Calvin B. Edwards, Jr., in relation to a motor vehicle accident that occurred on April 8, 2002, while appellant was operating a City-owned vehicle. Appellant sought relief from the City in the circuit court based on an earlier judgment for monetary damages entered against him in the District Court for Baltimore County, wherein the district court found that appellant was negligent in the operation of the City-owned vehicle at the time of the accident.

On appeal, appellant presents four questions [1] for our review, which we have distilled into a single question:

---

1. In his brief, appellant presents the following questions for our review:
 1. Did the [circuit] court err in failing to declare the City had a duty to defend and indemnify its employee, [appellant], in a motor tort case?
 2. Was the [circuit] court bound by the district court['s] findings that "[appellant] was outside the scope of his employment" while operating the City[-]owned vehicle so that it could not conduct a de

Did the circuit court err in failing to declare that the City, as the self-insurer of a City-owned vehicle operated by appellant at the time of the motor vehicle accident, had a duty to indemnify appellant?

We answer that question in the affirmative, and accordingly, we reverse the judgment of the circuit court and remand the case for further proceedings consistent with this opinion.

## BACKGROUND

On April 8, 2002, appellant was employed by the City as a Captain in the Baltimore City Fire Department ("BCFD"). On that date, appellant was scheduled to work his regular shift from 7:00 a.m. to 5:00 p.m. At approximately 4:30 p.m., while driving a City-owned vehicle, appellant picked up his children from school. At approximately 4:50 p.m., as appellant was driving his children home to feed them dinner, appellant's vehicle collided with the rear of a vehicle operated by Daniel Caulk. At the time of the impact, Caulk was lawfully stopped at a traffic signal on the westbound side of Liberty Road, near the intersection with Burmont Road, in Baltimore County.

On May 13, 2003, Erie Insurance Group ("Erie"), as subrogee of Caulk, filed a complaint in the District Court of

---

novo review of the district court complaint and extrinsic evidence offered by [appellant] to determine whether the potentiality of coverage was triggered, establishing the City's duty to defend [appellant]?
3. Did the [circuit] court err in determining that the City could rely upon the Local Government Tort Claims Act ... to defeat its duty to defend or indemnify [appellant] as required by [Maryland Code (1973, 2002 Repl.Vol.), section] 5–524 [of the Courts and Judicial Proceedings Article] and to defeat the mandatory motor vehicle insurance requirement set forth in [Maryland Code (1977, 2002 Repl.Vol.), section] 17–103 [of the Transportation Article]?
4. Did the [circuit] court fail to properly apply the holding of *BG[ ]E Home [Prods. & Servs., Inc.] v. Owens* [377 Md. 236, 833 A.2d 8 (2003)] to the City based upon its conclusion that a specific exclusion for permissive users was implicit in [a] local government's self-insured contracts?
In the argument section of his brief, however, appellant sets forth questions 2, 3, and 4 above in the form of arguments in support of his proposed resolution of question 1.

Maryland for Baltimore County against both appellant and the City.[2] In its complaint, Erie alleged, *inter alia:*

> For that on or about April 8, 2002, the Defendant, Calvin B. Edwards, Jr., while acting as the agent, servant and/or employee of the Defendant, Mayor and City Council of Baltimore, negligently and carelessly struck the vehicle owned by Daniel Caulk, whose vehicle was lawfully and properly stopped for traffic on Westbound Liberty Road near the intersection with Burmont Road in Baltimore County. And the damages to Daniel Caulk's vehicle were caused by the negligence of the Defendant, Calvin B. Edwards, Jr., in that he failed to keep a proper lookout, failed to yield right of way and generally operated his vehicle in a negligent and careless manner thereby colliding with the Caulk vehicle.
>
> The Defendant, Mayor and City Council of Baltimore, was negligent in that he entrusted the vehicle to the Defendant, Calvin B. Edwards, Jr., who operated the vehicle as the agent, servant and/or employee of the Defendant, Mayor and City Council of Baltimore, and the Defendant, Mayor and City Council of Baltimore, as the owner of the vehicle is vicariously liable for the conduct of the Defendant, Calvin B. Edwards, Jr. his agent, servant and/or employee, who was driving the vehicle.

Thereafter, on June 30, 2003, appellant received a letter from the City's Law Department, which informed him of the City's intent to deny coverage for the April 8, 2002 accident. Specifically, the letter advised appellant that the City would not defend him in the district court lawsuit or indemnify him if a judgment was rendered against him, because the allegations in the complaint placed him "outside the scope of [his] employment" and "not acting within [his] authorized official capacity at the time of the incident."

---

**2.** *Erie Ins. Grp. (as subrogee of Daniel Caulk) v. Calvin B. Edwards, Jr., et al.,* Dist. Ct. for Baltimore County, Case No. 08–04–0015438–2003.

On August 26, 2003, a trial was held in the district court. At the conclusion of the trial, the court (Wilson, J.) gave an oral opinion from the bench:

This court must be guided by the law with respect to whether indeed on this occasion there was agency between Captain Edwards at the time and the Mayor and City Council of Baltimore with respect to an accident which occurred on April the [8]th of 2002.

It is true to be certain that there is a presumption of agency as stated by counsel. State Farm verses Martin Marietta does presume an agency between principal and agent, which is rebuttable, but evidence [was] produced to the contrary.

Before me I have the testimony and Mr. Edwards acknowledges that on the date and time in question he had picked up his two children from school and was transporting them to his house with the intention of preparing a dinner meal for them to feed them before he again returned to a work assignment at the community action meeting to be held in Mondawmin. The accident occurs while Mr. Edwards is in the process of transporting his two minor children home.

\* \* \*

The court must look to see that if at the time of the event the defendant, Mr. Edwards, was furthering the business o f his employer, or as counsel stated, acting in furtherance of his own personal goals. If he [was] acting in furtherance of his own personal goals there is no agency, he is beyond the scope of his duties as a fire department employee and therefore there would be no coverage extended to him through the Mayor and City Council for Baltimore City.

The testimony is that at the time of this accident he was transporting his children home for the purpose of preparing dinner. The chief testified that that was not in furtherance of any fire department business. It very well may have been a common practice that individuals who were assigned

these cars used them for many purposes occasionally beyond the scope of their employment, but it is for this court to consider on this occasion whether this defendant, Mr. Edwards, was outside the scope of his employment, as he was not engaged in the business of the Mayor and City Council for Baltimore City. He was not furthering the business of the fire department. On the date and time of this event he was beyond the scope of his employment by transporting his children in the nonemergency service vehicle to his home for the purpose of preparing their dinner.

There was no evidence to suggest that the Mayor and City Council for Baltimore in any way ratified his actions or took any steps to accept or adopt as their responsibility his course of action in taking his children home for dinner on the date and time this accident occurred.

Upon those findings, the district court entered judgment in favor of the City as to Erie's claim. With respect to Erie's claim against appellant, the district court entered a judgment against him in the amount of $8,094.84 for property damage and car rental expenses, plus $40.00 in court costs. Appellant did not appeal the district court judgment.

On January 29, 2004, appellant assigned to Erie his claim for indemnification against the City. On March 8, 2004, appellant, to his own use and the use of Erie, filed a complaint for declaratory relief against the City in the Circuit Court for Baltimore County seeking, *inter alia,* indemnification for the judgment entered against him by the district court.[3] Of importance to this appeal, appellant alleged in the complaint that the City was self-insured pursuant to Md.Code (1977, 2006 Repl.Vol.), § 17–103 of the Transportation Article ("Trans.Art."), that the City failed to defend appellant in the district court litigation, and that the City failed to indemnify appellant for the judgment entered against him and in favor of Erie. Appellant asserted that "[a]n actual controversy therefore exists between [appellant] and [the City] as to whether

---

**3.** Appellant also sought an award of attorney's fees and costs incurred in connection with the filing of the declaratory judgment action.

the [City], a self-insured, can disclaim its obligation to indemnify [appellant] for the judgment entered against him."

The City answered, asserting that appellant failed to allege an actionable controversy, that appellant was acting outside the scope of his employment when the accident occurred, and that, as a result, the City was under no duty to defend or indemnify appellant in the district court action under the Local Government Tort Claims Act ("LGTCA"). *See* Md.Code (1973, 2006 Repl.Vol.), §§ 5–301–5–304 of the Courts & Judicial Proceedings Article.

In response to appellant's request under the Public Information Act, the Motor Vehicle Administration produced the self-insurance documentation for the City-owned vehicle that appellant was operating when the accident occurred on April 8, 2002. The documentation revealed that, on the date of the accident, the City-owned vehicle was insured for the mandatory minimum limits for bodily injury and property damage liability as required by Trans. Art. § 17–103(b). Later, in response to a Request for Admissions propounded by appellant, the City admitted that neither its self-insurance application nor the guarantee in effect on April 8, 2002, contained a permissive user clause. In general, a permissive user clause excludes liability insurance coverage when a motor vehicle is not operated within the scope of permission.

On November 1, 2004, the circuit court held a hearing on the merits of the declaratory judgment action. Thereafter, on November 29, 2004, the circuit court ruled that the City had no duty to defend or indemnify appellant, because the district court had "conclusively determined" that appellant was acting outside the scope of his employment with the City at the time of the accident. In a Memorandum Opinion and Order, the circuit court provided the following rationale for its ruling:

> This court cannot review a final decision of the District Court if it is not properly appealed. The decision of the District Court conclusively determined that Captain Edwards was outside the scope of his employment. Therefore, the LGTCA firmly established that Baltimore City was not

required to indemnify or defend Captain Edwards in the vehicular tort action in the District Court.

\* \* \*

[Maryland Code (1973, 2002 Repl.Vol.), section] 5–524 [of the Courts and Judicial Proceedings Article] requires that the local government cannot raise governmental immunity as a defense where the tort occurred while the vehicle was 'in government service or performing a task of benefit to the government.' . . . Both the 'scope of employment language' and the 'task for benefit' language serve the same purpose, which is to require the local government to indemnify and defend the actions of its employees when they are acting on behalf of the government. Therefore, both LGTCA [section] 5–303(b)(1) and [section] 5–524 only require the local government to indemnify or defend where the employee is acting on behalf of the local government.

\* \* \*

*BGE Home Products* [*& Services, Inc. v. Owens,* 377 Md. 236, 833 A.2d 8 (2003) ] holds that a 'permissive user clause,' with a private self-insured entity, which excludes coverage when a motor vehicle is not operated within 'the scope of permission,' cannot be found by implication where not specifically set forth in the self-insurance documents. . . . The City of Baltimore is not a private self-insured entity. Rather, the [] City is a local government, which falls under the purview of the LGTCA. The LGTCA, by statutory requirement, places permissive user clauses in local government's self-insured contracts. Thus, the lack of the specific language requiring a permissive user clause does not present the same problem to a local government as it does to a municipality [sic]. For the reasons set forth above, *BGE Home Products* is not controlling in this case.

Thereafter, appellant timely filed the instant appeal.

## *DISCUSSION*

At the time of the accident on April 8, 2002, the City played three distinct legal roles. The City was simultaneously (1) the

local government employer of appellant, who was the operator of the "at-fault" vehicle, (2) the owner of the "at-fault" vehicle, and (3) the self-insurer of the "at-fault" vehicle. Each of these roles carries with it different legal rights and responsibilities for the City. Unfortunately, the parties and the circuit court blurred the distinction among these roles in the case *sub judice*. Accordingly, a separate analysis of each role of the City, and the legal effect thereof when applied to the facts of the instant case, will be of assistance in resolving the issue presented in this appeal.

## I.

### *The City's Liability as Employer of Appellant under the LGTCA*

In the district court action, Erie sued appellant, individually, and claimed that appellant negligently struck the vehicle of its insured "while acting as the agent, servant and/or employee of the [City]." As noted, at the conclusion of the trial, the district court entered judgment in favor of Erie and against appellant in the amount of $8,094.84, plus $40.00 in court costs. The first question thus is whether the City is liable for the payment of the judgment against appellant under the LGTCA, because appellant was an employee of the City at the time of the accident.

■ The LGTCA is a defense and indemnification statute, *Hines v. French*, 157 Md.App. 536, 571, 852 A.2d 1047 (2004), the purpose of which in part is "to limit the liability of local governments and require them to provide a defense to their employees under certain circumstances." *Williams v. Prince George's County*, 112 Md.App. 526, 553, 685 A.2d 884 (1996). Section 5–302(a) of the LGTCA states that a local government must provide a legal defense for its employees in tort actions alleging tortious conduct "within the scope of employment with the local government." [4] Section 5–303(b)(1) then pro-

---

4. Section 5–302(a) of the LGTCA states:

vides that, except for punitive damages, a local government is liable for any judgment against its employee for damages from tortious conduct "committed by the employee within the scope of employment with the local government." [5] Under the LGTCA, the local government also may not assert governmental or sovereign immunity to avoid its duty to defend or indemnify its employees. LGTCA § 5–303(b)(2).

The Court of Appeals has explained:

> The [LGTCA], makes all entities defined therein as "local governments" responsible for the legal defense of their employees, and liable for judgments for compensatory damages rendered against their employees, **in suits against the employees based on tortious acts committed in the scope of their governmental employment.** In addition, the LGTCA prohibits local governments from asserting the defense of governmental immunity to avoid this responsibility and liability, and it establishes monetary caps per individual claim and occurrence on the recoverable damages.

*Housing Auth. of Baltimore City v. Bennett,* 359 Md. 356, 357–58, 754 A.2d 367 (2000) (emphasis added).

▇▇ Moreover, "[t]he only liabilities created by the LGTCA or expressly dealt with in the LGTCA *concern tort suits against government employees." Id.* at 373, 754 A.2d 367 (emphasis added). In other words, under the LGTCA, "a plaintiff may not sue a local government . . . directly but must

---

(a) *Government to provide legal defense to employees.*—Each local government shall provide for its employees a legal defense in any action that alleges damages resulting from tortious acts or omissions committed by an employee within the scope of employment with the local government.

5. Section 5–303(b) of the LGTCA reads:

(b) *When government liable.*—(1) Except as provided in subsection (c) of this section, a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government.

(2) A local government may not assert governmental or sovereign immunity to avoid the duty to defend or indemnify an employee established in this subsection.

sue, instead, the employee." *Williams v. Montgomery County,* 123 Md.App. 119, 126, 716 A.2d 1100 (1998) *aff'd,* 359 Md. 379, 754 A.2d 379 (2000); *see Williams v. Prince George's County,* 112 Md.App. 526, 552, 685 A.2d 884 (1996) ("[Section] 5–403 does not provide a method for directly suing the County or other local governments.").

■ In the case *sub judice,* at the time of the accident, appellant was an employee of the City, a local government of Maryland. *See* LGTCA § 5–301(d)(4) (defining Baltimore City as a local government). As a local government employer, the City is obligated "to pay judgments awarded in actions against [its] employees for tortious acts or omissions committed *within the scope of employment." Ennis v. Crenca,* 322 Md. 285, 292, 587 A.2d 485 (1991) (emphasis added).

In its opinion, the circuit court observed that the district court found that, at the time of the accident, appellant was acting outside of the scope of his employment because "he was not furthering the business of the fire department." Because the district court case had not been appealed, the circuit court concluded that the district court's decision could not be reviewed and that the district court "conclusively determined that [appellant] was outside the scope of his employment." Therefore, according to the circuit court, the City was not required to indemnify or defend appellant in the district court action under the LGTCA.

Appellant contends in this Court that the circuit court erred, as a matter of law, when it "opined it was bound by the District Court.['s] conclusion that [appellant] was outside the scope of his employment." Specifically, appellant claims that the initial decision of whether a potentiality of insurance coverage exists is reviewable *de novo* by a court in a declaratory judgment action. The City counters by arguing that (1) under the doctrine of collateral estoppel, the district court's determination of "outside the scope of employment" is final and cannot be relitigated, (2) a *de novo* review of the district court action can occur only when an appeal is taken and the amount in controversy does not exceed $5000, and (3) a *de*

*novo* review of a decision regarding potentiality of insurance coverage applies only to an "insurer's initial decision concerning coverage," not factual findings of a court of competent jurisdiction.

In his reply brief, appellant apparently abandons his argument and concedes that the district court's factual finding of "outside the scope of employment" is final and binding with regard to the City's liability under the LGTCA. Appellant states that he "is not attempting to relitigate the issue of the City's liability, in its capacity as his employer, for his conduct involved in the motor tort," and "was not seeking a *de novo* review of the District Court['s] decision in filing his Complaint for Declaratory Judgment." Instead, appellants "was seeking a *de novo* review of the City's decision, *in its capacity as an insurer*, as to whether a potentiality of coverage existed for [appellant] in the [district court action]." (Emphasis in original).

■ When declaring the district court's factual finding of "outside the scope of employment" to be conclusive and unreviewable, the circuit court limited its holding to the City's liability as appellant's employer under the LGTCA. We agree. Under the LGTCA, a local government is obligated to indemnify its employees for judgments arising out of their tortious conduct only when such conduct is committed within the scope of their employment with the local government. LGTCA § 5–303(b). The district court found that appellant was acting outside the scope of his employment at the time of the accident. When the district court action was not appealed, that finding became final, and the doctrine of collateral estoppel precluded any relitigation thereof in the case *sub judice.*[6]

---

6. We recognize that in the district court action appellant and the City were codefendants and no cross-claim had been filed by either party. Nevertheless, it is clear that the interests of the City and appellant were adverse on the scope of employment issue. Two months prior to trial in the district court, the City advised appellant that the City "will neither provide representation for you nor indemnify you," because at the time of the accident appellant was acting "outside the scope of [his] employment."

*See Potomac Design, Inc. v. Eurocal Trading, Inc.,* 839
F.Supp. 364, 366 (D.Md.1993) (stating that when an issue of
fact or law is actually litigated and determined by a valid final
judgment, and that determination is essential to the judgment,
the determination is conclusive in a later action between the
parties, whether the same or a different claim is asserted); *see
also Welsh v. Gerber Products,* 315 Md. 510, 516, 555 A.2d 486
(1989). Accordingly, the circuit court did not err in concluding
that the City, as appellant's employer, was not liable to pay
the judgment against appellant under the LGTCA.[7]

## II.

### *The City's Liability as Owner of the "At–Fault" Vehicle*

In the district court case, Erie also named the City as a
defendant, because the City, "as the owner of the vehicle is
vicariously liable for the conduct of [appellant] [its] agent,
servant, and/or employee, who was driving the vehicle." Thus,
separate and apart from the City's obligations under the
LGTCA, Erie was seeking to impose liability on the City by
virtue of its status as the owner of the "at-fault" vehicle under
common law agency principles.

It is well settled that the "[m]ere ownership of a car
does not impose liability for injuries caused in the driving of
it." *Toscano v. Spriggs,* 343 Md. 320, 325, 681 A.2d 61 (1996)
(internal quotation omitted). Nevertheless,

"when the owner has not himself been the negligent cause
of an injury, he can be held liable vicariously only when the
negligence has been that of his servant engaged in his
affairs. He is not even liable for the negligence of his
general servant, his chauffeur, for instance, unless at the
time the servant has been conducting the owner's affairs."

---

7. The circuit court also held that the City was under no duty, pursuant
to the LGTCA, to defend appellant in the district court action. We need
not review that ruling, because, in his complaint in the instant case,
appellant did not seek a declaration of the City's duty to defend him in
the district court action, only the City's "duty to indemnify [appellant]
for the judgment entered against him."

*Id.* (quoting *Schneider v. Schneider,* 160 Md. 18, 20–21, 152 A. 498 (1930)).

■ This common law doctrine is one of agency and "rests on the relationship of the parties and the nature of the expedition during which the accident occurred." *Slutter v. Homer,* 244 Md. 131, 139, 223 A.2d 141 (1966). In other words, the doctrine is not limited to an employer-employee relationship, but covers any agency relationship, paid or voluntary. *See Shipley v. Walker,* 230 Md. 133, 136–37, 186 A.2d 472 (1962) (stating that "[w]e think it is clear that [the driver] was not the *agent or servant* of [the owner] at the time of the accident" (emphasis added)). In *Slutter,* the Court of Appeals quoted with approval comment j of Section 491, Restatement, Second, Torts:

> \* \* \* [I]f the purpose of the journey is for the benefit of the owner, even though it is also for the benefit of him who is permitted to drive, the owner may under the principles of the law of Agency be regarded as the master of the driver even though no wages or reward other than the participation in the drive is paid to him.

*Slutter,* 244 Md. at 140, 223 A.2d 141 (alternation in original) (internal quotations omitted).

■ "[U]nder Maryland law there is a presumption that 'the negligent operator of a vehicle is the agent, servant, or employee of the owner acting within the scope of his employment.'" *Mackey v. Dorsey,* 104 Md.App. 250, 260, 655 A.2d 1333 (1995) (quoting *Williams v. Wheeler,* 252 Md. 75, 82, 249 A.2d 104 (1969)); *See Toscano,* 343 Md. at 325, 681 A.2d 61; *Vonderhorst Brewing Co. v. Amrhine,* 98 Md. 406, 411, 56 A. 833 (1904). This presumption is a rebuttable one. *Mackey,* 104 Md.App. at 260, 655 A.2d 1333.

Here, the district court ruled that the City was not liable as the owner of the vehicle operated by appellant at the time of the accident on April 8, 2002. The district court explained that it was "guided by the law with respect to whether on this particular occasion there was agency between [appellant] at the time and the [City]." Noting that the presumption of

agency is a rebuttable one, the court reviewed the evidence to determine whether or not at the time of the accident appellant "was furthering the business of his employer, or ... acting in furtherance of his own personal goals. If he [was] acting in furtherance of his own personal goals there is no agency,...." The district court found that, at the time of the accident, appellant "was not engaged in the business of the [City] [] ... by transporting his children in the nonemergency service vehicle to his home for the purpose of preparing their dinner." [8] Accordingly, the district court held that the City was not liable to Erie as the owner of the vehicle operated by appellant. No other basis for liability of the City was considered by the district court,[9] and no appeal was taken from the decision of the district court.

In the instant appeal, appellant does not attack directly the district court's holding that the City was not liable *as the owner* of the vehicle operated by appellant at the time of the accident. Instead, appellant asserts that the circuit court erred when it determined that the language contained in LGTCA § 5–303(b)(1) "is the functional equivalent to the language contained in [Md.Code, § 5–524 of the Courts & Judicial Proceedings Article ('C.J.') ]." Specifically, appellant claims that C.J. § 5–524 "provides even broader requirements than the LGTCA," because "[t]he statute focuses on the *plaintiff's claim* that property damage was caused by negligent use of the motor vehicle while in 'government service' or 'performing a task of benefit to the government.'" According to appellant, it is the allegations in the complaint in district court that "triggered the requirement that the City provide [appellant] with a defense and further acted to prohibit the City from attempting to raise the defense of sovereign or governmental immunity." Both the court and appellant mis-

---

8. As previously stated, the court also found that appellant's actions were "beyond the scope of his employment."

9. In its complaint, Erie also claimed that the City was negligent in entrusting its vehicle to appellant. Apparently, Erie did not pursue this cause of action at trial.

construe C.J. § 5–524 because they confuse the legal responsibilities of the City as appellant's employer with the City's legal obligations as the owner of the vehicle operated by appellant.

LGTCA § 5–303(b)(1) provides that, except for punitive damages, "a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." On the other hand, C.J. § 5–524 reads in relevant part:

> An owner or lessee of any motor vehicle ... may not raise the defense of sovereign or governmental immunity, to the extent of benefits provided by the security accepted by the Motor Vehicle Administration under § 17–103 of the Transportation Article, in any judicial proceeding in which the plaintiff claims that personal injury, property damage, or death was caused by the negligent use of the motor vehicle while in government service or performing a task of benefit to the government.

(Emphasis added).

It is clear that section 5–524, by its plain language, applies to a local government as the owner of a vehicle, not as an employer under the LGTCA. The purpose of section 5–524 is simply to place a local government in the same position, to the extent of the mandatory minimum insurance requirements, as any owner of a vehicle who is sued on account of the negligence of the owner's agent or employee. Section 5–524 has nothing to do with a local government's obligation to defend and indemnify its employees under the LGTCA.

■ In the case *sub judice,* C.J. § 5–524 applied to the City in the district court case because Erie alleged in its complaint that the City "as owner of the vehicle is vicariously liable for the conduct of [appellant, its] agent, servant and/or employee, who was driving the vehicle." Erie did not, nor could it have, sued the City under the LGTCA. *See Williams v. Montgomery County,* 123 Md.App. at 126, 716 A.2d 1100 (stating that under the LGTCA, "a plaintiff may not sue a local government ... directly but must sue, instead, the employee."). More-

over, the City complied with C.J. § 5–524 because the City never raised the defense of governmental immunity. Instead, the City raised the defense, as would any non-government vehicle owner, that appellant was not acting in furtherance of the City's business at the time of the accident, and thus the City was not vicariously liable for appellant's negligence.

Therefore, to the extent that the circuit court may have erred by equating the language of LGTCA's 5–303(b)(1) with C.J. § 5–524, we conclude that, in the context of the facts of this case, any such error is harmless.

### III.

### *The City's Liability as Insurer of the "At–Fault" Vehicle*

In his complaint for declaratory relief in the case *sub judice*, appellant alleged that the City was self-insured pursuant to Trans. Art. § 17–103 and that an actual controversy existed regarding whether the City, "a self-insured, can disclaim its obligation to indemnify [appellant] for the judgment entered against him." In its answer to appellant's complaint, the City admitted that it was self-insured under Trans. Art. § 17–103, but denied any obligation to indemnify appellant because, according to the City, under the LGTCA appellant "was acting outside of the scope of his employment at the time of the accident." Therefore, we come to the final, and ultimate, issue in this appeal—whether the City, in its capacity as self-insurer of the "at fault" vehicle, is obligated to indemnify appellant for the judgment entered against him in the district court action.

### A. Mandatory Motor Vehicle Insurance

"Maryland is a compulsory motor vehicle insurance state." *BGE Home Prods. & Servs., Inc. v. Owens,* 377 Md. 236, 239, 833 A.2d 8 (2003). As such, " 'the owner of a motor vehicle registered or required to be registered in Maryland must maintain a motor vehicle insurance policy on the vehicle, or self-insurance approved by the M.V.A. [Motor Vehicle Administration].' " *Id.* (quoting *Van Horn v. Atlantic Mutual Ins. Co.,* 334 Md. 669, 680–81, 641 A.2d 195 (1994)

(alternation in original)). The General Assembly's purpose in adopting motor vehicle laws requiring insurance on vehicles is to promote the established legislative policy in Maryland that seeks to assure that victims of automobile accidents have a guaranteed avenue of financial redress. *Rentals Unlimited, Inc. v. Aetna Casualty & Surety Ins. Co.,* 101 Md.App. 652, 660, 647 A.2d 1278 (1994).

 Subject to a few narrow exceptions not applicable here, Trans. Art. § 17–103(b) requires that every owner of a registered motor vehicle maintain liability coverage for:

(1) The payment of claims for bodily injury or death arising from an accident of up to $20,000 for any one person and up to $40,000 for any two or more persons, in addition to interest and costs;

(2) The payment of claims for property of others damaged or destroyed in an accident of up to $15,000, in addition to interest and costs;

\* \* \*

"The required insurance attaches to automobiles, not to persons." *Blue Bird Cab Co., Inc. v. Amalgamated Casualty Ins. Co.,* 109 Md.App. 378, 387, 675 A.2d 122 (1996).

 At common law, local governments in Maryland enjoy governmental immunity in negligence actions when the activity forming the basis of the lawsuit is "governmental," rather than "proprietary," in nature, unless such immunity is waived statutorily by the General Assembly. *Bennett,* 359 Md. at 359-60, 754 A.2d 367; *Pavelka v. Carter,* 996 F.2d 645, 648 (4th Cir.1993). Owning or operating a motor vehicle in the discharge of a governmental function, such as fire protection services, is a "governmental" activity. 18 Eugene McQuillin, *The Law of Municipal Corporations,* § 53.45 (3rd ed., rev.vol. 2003) (stating that, "in the absence of statute, a municipal corporation is not liable for an injury inflicted by the negligent operation of a motor vehicle in the performance of a governmental function"). By enacting Trans. Art. § 17–107(c),[10]

---

**10.** Section 17–107(c) reads:

the General Assembly waived any governmental immunity with respect to the mandatory security that must be maintained by owners or lessees of registered motor vehicles pursuant to Trans. Art. § 17–103(b). *Pavelka,* 996 F.2d at 650 (stating that section 17–107(c) "merely prevents Maryland's governmental entities from interposing the governmental or sovereign immunity they might otherwise enjoy to frustrate otherwise proper recovery against the mandatory security all vehicle operators (including governmental ones) must post"). Moreover, to the extent of the security required by section 17–103(b), the waiver of governmental or sovereign immunity under section 17–107(c) "puts governmental vehicle owners or lessees in the same position as private owners or lessees." *Id.*

The General Assembly also has recognized approved self-insurance as the equivalent of a liability insurance policy. *See* Trans. Art. § 17–103(a); *BGE Home,* 377 Md. at 246–47, 833 A.2d 8. Specifically, the Court of Appeals explained:

"[W]e see no reason to distinguish a certificate of self-insurance from a motor vehicle liability insurance policy. Indeed, by making the minimum amounts of required coverage applicable to motor vehicle liability policies as well as to all other forms of security, we think the legislature demonstrated a clear intent to treat all forms of insurance equally."

*Id.* at 247, 833 A.2d 8 (quoting *Hines v. Potomac Elec. Power Co.,* 305 Md. 369, 375, 504 A.2d 632 (1986)). "That established a statutorily mandated symmetry." *Montgomery County Bd. of Educ. v. Horace Mann Ins. Co.,* 383 Md. 527, 541, 860 A.2d 909 (2004).

The City contends that the exclusion of the City's liability as an employer for its employees' torts committed outside the scope of employment under the LGTCA also exempts the City

---

(c) *Defense of sovereign immunity.*—An owner or lessee of any motor vehicle registered under Title 13 of this article may not raise the defense of sovereign or governmental immunity as described under § 5–524 of the Courts and Judicial Proceedings Article.

from liability as the self-insurer of the vehicle operated by appellant "outside the scope of employment." Again, this argument confuses the City's obligations as an employer under the LGTCA with the City's liability as the self-insurer of appellant's vehicle.

There is no language in the mandatory insurance provisions of Trans. Art. § § 17–101 through 17–110 that permits an insurer to exclude coverage for drivers operating employer-owned vehicles outside the scope of their employment. The Court of Appeals "has generally held invalid insurance policy limitations, exclusions and exceptions to the statutorily required coverages which are not expressly authorized by the Legislature." *Van Horn v. Atlantic Mutual Ins. Co.*, 334 Md. 669, 686, 641 A.2d 195 (1994). Moreover, such exclusion would be contrary to the legislative policy of compulsory motor vehicle insurance, which is to promote the victims' interest in securing compensation for injuries negligently inflicted on them. *See Pavelka*, 996 F.2d at 650; *BGE Home*, 377 Md. at 245, 833 A.2d 8; *Van Horn*, 334 Md. at 683, 641 A.2d 195.

Under the City's interpretation of the statute, there would be a vast number of local government-owned vehicles, such as "take home" cars, that would be without any insurance coverage when operated "outside the scope of employment," but with the permission of the local government, (i.e., on approved personal business of the employee). The exclusion proposed by the City also would be contrary to the "statutorily mandated symmetry" found by the Court of Appeals to exist between approved self-insurance and a liability insurance policy. *Horace Mann*, 383 Md. at 541, 860 A.2d 909. Thus it would be an "extreme anomaly" to permit an exclusion from coverage if a local government self-insured its vehicles, but not permit the same exclusion if a commercial carrier provided an insurance policy covering the same vehicles. *See BGE Home*, 377 Md. at 249, 833 A.2d 8.

### B. Permissive User Clause

Many motor vehicle insurance policies contain what is commonly referred to as a "permissive user . clause." *BGE*

*Home,* 377 Md. at 248, 833 A.2d 8. This clause limits the liability coverage "for a person, other than the named insured, to situations where such person is using . . . [the vehicle] with the permission of the named insured, provided his actual operation [was] within the scope of such permission." *Id.* at 240, 833 A.2d 8 (internal quotations omitted) (alteration in original).[11]

Such exclusion, however, "is not an integral part of all motor vehicle insurance policies." *Id.* at 247, 833 A.2d 8. As the Court of Appeals has noted, there is "no requirement for permissive user language in 'an omnibus clause to appear in any motor vehicle liability insurance policy.'" *Id.* at 247–48, 833 A.2d 8 (quoting *National Grange Mutual Ins. Co. v. Pinkney,* 284 Md. 694, 704–06, 399 A.2d 877 (1979)). Further, Maryland law does not recognize by implication, "exclusions, restrictions, or limitations which are not mentioned in . . . self-insurance documents." *Id.* at 250, 833 A.2d 8.

 In its opinion, the circuit court impliedly found that at the time of the accident appellant was operating the City-owned vehicle outside the scope of permission of the BCFD, because appellant was "transporting his children home for dinner, which is contrary to Fire Department Rules and Regulations."[12] Notwithstanding the City's failure to include

---

11. The Court of Appeals pointed out, however, that permissive user clauses in insurance policies "often contain different wording." *BGE Home,* 377 Md. at 240 n. 1, 833 A.2d 8. For example, some insurance policies do not contain the "scope of such permission" language and simply define an insured as anyone operating a covered vehicle "with your permission." *Id.*

12. The regulation that appellant violated prohibited non-fire department personnel from traveling as passengers in a nonemergency service vehicle without permission, and at the time of the accident no such permission had been granted to appellant for his children. At the trial in the instant case, however, appellant's uncontroverted testimony was that he had permission to drive his vehicle in jurisdictions other than Baltimore City and to take the vehicle home so that he could leave from home to drive to meetings. At the time of the accident, appellant was not only taking his children home for dinner, but was planning to eat dinner there himself before going to a community association meeting that evening, which was part of his duties for the BCFD. Nevertheless,

a permissive user clause in its application for self-insurance, the circuit court held that "[t]he LGTCA, by statutory requirement, places permissive user clauses in local government's self insured contracts." [13] We disagree and explain.

The exclusion of the LGTCA for torts committed by employees "outside the scope of employment" relates to the City's liability as the employer of appellant, while an exclusion under a permissive user clause involves the City's liability as the self-insurer of the vehicle operated by appellant. These exclusions are fundamentally different in nature. As we have stated, a local government's obligation to defend and indemnify its employees for their torts is limited to torts committed "within the scope of employment." LGTCA §§ 5–302(a), 5–303(b)(1). On the other hand, a motor vehicle insurer's responsibility under Maryland's compulsory insurance laws can be restricted by a permissive user clause to persons operating the vehicle with the permission of the named insured. *BGE Home*, 377 Md. at 240, 833 A.2d 8.

In an analogous context, the Court of Appeals articulated the distinction between the liability of an insurance carrier under a permissive user clause and the responsibility of the vehicle's owner for the torts of an agent or employee operating the vehicle. *See Toscano*, 343 Md. at 320, 681 A.2d 61. In *Toscano*, the owner of the vehicle, who was not driving at the time of the accident, was found not to be liable for the negligence of the operator, because the presumption of agency had been rebutted as a matter of law. *Id.* at 330, 681 A.2d 61. Writing for the Court, Judge Rodowsky explained:

> There are a number of cases in our reports in which the use of the owner's vehicle uncontrovertedly was, or could be found to be, used with the permission of the owner, but in which the uncontradicted evidence of the purpose of that

appellant does not raise a question in this appeal that the circuit court was clearly erroneous in its finding.

**13.** The circuit court cited to no statutory or case law authority to support this holding, nor have we found any such authority.

permitted use, as a matter of law, rebutted the presumption that the operator was the agent of the owner.

*Id.* at 329, 681 A.2d 61.

Because it was unclear which one of two individuals was operating the vehicle at the time of the accident, the owner asked the Court to decide who was the negligent driver. Declining to do so, the Court observed:

> **Toscano's concern (i.e., Toscano's insurer's concern) anticipates a claim by Spriggs that Breedlove was a permissive user who was covered for damages awarded in this case under the omnibus clause of Toscano's insurance policy.** It may be that Toscano's insurer considers that its likelihood of being able to rebut the presumption of permissive use would be greater if it can be established that Farmer was the negligent driver, . . . .

*Id.* (emphasis added).

Therefore, contrary to the circuit court's view, it does not logically follow that the LGTCA exclusion for "outside the scope of employment" would place a permissive user clause in a local government's self-insurance coverage.

In the instant case, the City made an "Application for Maryland Self Insured Fleet" on or about January 2, 2002. The Application provided for the minimum liability coverage for bodily injury and property damage as required under Maryland law. *See* Trans. Art. § 17–103(b). The application did not contain a permissive user clause. On January 10, 2002, the City executed a "Guarantee" that provided, in-part that,

> in order to secure the payments of the required minimum benefits under [s]ection 17–103(b) of Title 17, . . . the City agrees and undertakes to guarantee the payment of any valid claims arising from a motor vehicle accident as if a policy of vehicle liability insurance were in effect providing the required minimum benefits in compliance with said sections of the Vehicle Laws . . . .

The Application was approved by the MVA and a Certificate of Self–Insurance was issued to the City for the period of February 1, 2002 through February 1, 2003.

In our view, the teachings of *BGE Home* are dispositive of the permissive user clause issue in the instant appeal. In *BGE Home*, BGE submitted to the Motor Vehicle Administration ("MVA") a self-insurance application for its vehicles, as well as a signed "Guarantee," which guaranteed payment of all valid claims "as if a policy of vehicle liability insurance were in effect." *Id.* at 239–40, 833 A.2d 8 (internal quotations omitted). Neither the application nor the Guarantee contained a permissive user clause. *Id.* at 240, 833 A.2d 8. The MVA subsequently issued BGE a "Certificate of Self–Insurance," for the period of February 1, 1998 to February 1, 1999. *Id.*

On July 16, 1998, Michael Owens, a BGE employee, was driving a BGE van from his workplace to his home after completion of the workday. *Id.* On his way, Owens stopped by a friend's apartment and consumed six or seven beers. *Id.* at 241, 833 A.2d 8. After resuming his journey home, Owens lost control of the van, crossed the centerline, and collided with another vehicle. *Id.*

After suit was filed against Owens and BGE to recover for personal injuries suffered in the accident, BGE filed a separate declaratory action in the circuit court, seeking a declaration that it was not obligated to defend or indemnify Owens because, at the time of the accident, Owens was not operating the BGE van within the scope of permission. *Id.* at 241–42, 833 A.2d 8. The circuit court granted summary judgment against BGE, holding that BGE had a duty to defend and that the absence of a permissive user clause in the self-insurance documents "precluded BGE from disclaiming coverage on the ground that Owens was not driving within the scope of permission." *Id.* at 242–43, 833 A.2d 8.

On appeal, the Court of Appeals upheld the ruling of the circuit court. *Id.* at 245, 833 A.2d 8. The Court held, *inter alia*, "that the court below correctly decided that the absence of a permissive user clause in the self-insurance documents

precluded BGE from disclaiming indemnity coverage on the ground that Owens was not driving the vehicle within the scope of permission." *Id.* The Court began its analysis with the premise that, under Maryland's compulsory motor vehicle insurance law, " 'the General Assembly ... recogniz[ed] approved self-insurance as the equivalent of an insurance policy,' " *id.* at 246–47, 833 A.2d 8 (quoting *West American v. Popa,* 352 Md. 455, 475, 723 A.2d 1 (1998)), and that all forms of insurance should be treated equally. *Id.* at 249, 833 A.2d 8.

The Court then reasoned:

Maryland law clearly does not recognize exclusions, restrictions, or limitations in insurance policies which are not set forth in the policies. In fact, as pointed out above, even many of those expressly set forth are not given effect. Likewise, we should not recognize exclusions, restrictions, or limitations which are not mentioned in the self-insurance documents.

*Id.* at 249–50, 833 A.2d 8.

The Court concluded: "If a self-insurer desires a particular exclusion or restriction, the self-insurer should put it in its application. The exclusion or restriction will then have the same status as an exclusion or restriction in a motor vehicle insurance policy." *Id.* at 250, 833 A.2d 8.

 Like BGE, neither the City's application for self-insurance nor the Guarantee executed on behalf of the City contained a permissive user clause. In light of the language and purpose of Maryland's compulsory insurance law, we see no meaningful distinction between a private and local government self-insurer of a motor vehicle. Indeed, to create such distinction would violate the statutorily mandated symmetry between a certificate of self-insurance and a motor vehicle liability insurance policy, because a local government self-insurer would be treated differently from both a private self-insurer and a motor vehicle insurance carrier. *See BGE Home,* 377 Md. at 247, 833 A.2d 8. Accordingly, because the City's self-insurance documents in effect at the time of the accident did not contain a permissive user clause, the City

cannot deny liability insurance coverage for appellant on the grounds that appellant was operating a City-owned vehicle without permission or outside the scope of such permission.[14]

## CONCLUSION

The City, as the self-insurer of the "at-fault" vehicle involved in the April 8, 2002 accident, is obligated under Trans. Art. § 17–103(b) to pay property damage liability claims up to $15,000.00. The City did not include in its application for self-insurance any permissive user clause, and thus under *BGE Home* no such exclusion existed in the City's Certificate of Self–Insurance on April 8, 2002. The district court determined that appellant, as the operator of the self-insured vehicle, was liable for property damage and rental expenses in the amount of $8,094.84, plus $40.00 in court costs. Accordingly, the City is liable, as the self-insurer, to pay the judgment entered against appellant for the negligent operation of the City-owned vehicle in the same manner as an insurance company under an ordinary motor vehicle liability insurance policy. This obligation is without regard to whether the City is required to indemnify appellant under the LGTCA or whether the City is vicariously liable for appellant's negligence as the owner of the "at-fault" vehicle.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSIS-**

---

14. We do not mean to suggest that, if the City had placed a permissive user clause in its self-insurance documents, appellant would have been excluded from coverage. Whether a driver is operating a vehicle in violation of a permissive user clause must be determined based on the facts and circumstances of each case in light of the precise language of the permissive user clause. *See BGE Home,* 377 Md. at 248, 833 A.2d 8 ("If we were to construct a clause excluding persons driving without permission, but not excluding permissive drivers who may exceed the scope of permission, such a clause would not help BGE's argument in this case."). Moreover, as we have stated, the issue of permissive use under a liability insurance policy is separate and distinct from the issues of (1) "outside the scope of employment" in the employer—employee context, and (2) an agency relationship between the owner and operator of a vehicle.

TENT WITH THIS OPINION; THE MAYOR AND CITY COUNCIL OF BALTIMORE TO PAY COSTS.

KENNEY, J., participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.